COMMISSIONER OF CORRECTION *v.* ANDRES RODRIQUEZ
(14260)

PETERS, C. J., SHEA, GLASS, COVELLO and SANTANIELLO, Js.

Argued February 13—decision released June 4, 1992

*Jacqueline J. Footman,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Christopher Alexy,* assistant state's attorney, for the plaintiff in error.

*Karen A. Goodrow,* for the defendant in error.

COVELLO, J. This is a writ of error from a judgment of the Superior Court granting the defendant in error's (petitioner) petition for a writ of habeas corpus. In 1983, a jury found the petitioner, Andres Rodriquez, guilty of arson in the first degree in violation of General Statutes §§ 53a-111 and 53a-8.[1] We upheld the conviction on appeal. *State* v. *Rodriquez,* 200 Conn. 685, 513 A.2d 71 (1986). The petitioner thereafter sought a writ of habeas corpus. The habeas court granted the petition and ordered a new trial concluding that the petitioner had been denied a fundamental constitutional right because his attorney had not fully informed him of his right to testify. After the habeas court denied the state's petition for certification to appeal, the state filed this writ of error.

The issues on appeal are: (1) whether the habeas court erred in viewing the petitioner's claim as one that constituted a violation of the right to due process in accordance with the fifth and fourteenth amendments to the United States constitution; and (2) whether the habeas court applied the wrong legal standard in reviewing the petitioner's claim that he had been denied effective assistance of counsel pursuant to the sixth amendment to the United States constitution.[2] We conclude

---

[1] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes (Rev. to 1981) § 53a-111 provides: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

[2] There are also two procedural issues that are incidental to the main issue. First, the state claims that the habeas court erred in reviewing the

that the habeas court should not have considered the petitioner's claim of a violation of due process separately from his ineffective assistance of counsel claim. Further, it failed to conduct the legal analysis necessary for evaluating the petitioner's claim of ineffective assistance of counsel. We, therefore, reverse and remand the matter for a new hearing.

Evidence adduced at the petitioner's criminal trial as reported in *State* v. *Rodriquez*, supra, 688–93, served to establish the following facts. On March 21, 1982, the Agron Superette, a neighborhood grocery store owned by the petitioner and his wife, was firebombed. Circumstantial evidence tended to show that the petitioner had intentionally placed an open container of gasoline in the store in order to assist an unidentified man in the firebombing of the market with a "Molotov cocktail," in this instance, a Coca-Cola bottle stuffed with a burning rag. The petitioner and his employee, Francisco Lopez, were the only persons who had keys to the store. Lopez, who was not under suspicion, testified that the gasoline container had not been in the store when he had secured the shop for the night. Police officials testified that the petitioner, who had arrived shortly after the incident, had seemed unusually calm and had been able to identify the smoking "Molotov cocktail" as a Coca-Cola bottle from a distance of fifty feet. At the time he made this identification, no one had told the

petitioner's due process claim because the claim should have been brought on direct appeal. We need not consider this claim because we conclude that the habeas court should not have reviewed the claim for a different reason, i.e., that the due process claim was actually an ineffective assistance of counsel claim.

Second, the petitioner argues that the claims raised by the state are beyond the limited scope of review required by a writ of error. Although a writ of error is limited to errors apparent upon the face of the record; *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 44 n.1, 46 nn.6 and 7, 478 A.2d 601 (1984); we conclude that the errors alleged here fall within that category.

petitioner the kind of bottle that had been involved. Moreover, the police testified that the petitioner had been standing too far away to identify it visually. There was also evidence that the owner of the building had begun summary process proceedings to evict the petitioner, that the eviction hearing had been scheduled for the day after the firebombing, that the petitioner had recently attempted to increase his fire insurance on the store, and that he had wanted a beer permit for his other store but could not obtain one as long as the Agron Superette had a similar permit.

In his habeas proceeding, the petitioner claimed that he had been denied effective assistance of counsel because his trial counsel had not fully informed him that he had a right to testify, that it was his right to choose whether to testify, and that he would have testified if he had known of such a right. The petitioner also claimed that his right to due process had been violated because he had not been informed of his right to testify on his own behalf.[3] At the habeas trial, in addition to his own testimony, the petitioner offered the testimony of two witnesses in addition to his own: Earl Williams, his trial counsel, and Michael Devlin, who testified as an expert in criminal law.

Williams testified that he had had a professional relationship with the petitioner in civil matters for approximately five years prior to his representation of him in connection with the present case. He had decided that he did not want the petitioner to take the stand at his criminal trial for several strategic reasons: (1) the state was aware that there had been fires and subsequent insurance claims at other properties owned by the petitioner. Williams thought that the state might have been prepared to cross-examine the petitioner on this matter; (2) an eyewitness who knew the peti-

---

[3] The petitioner also raised a number of other ineffective assistance of counsel and due process claims that are not presently before us.

tioner had seen someone other than the petitioner throw something at the store shortly before the fire; (3) he believed that the petitioner had a strong case and that the petitioner should let the state attempt to prove its heavy burden; and (4) he did not want to be surprised by anything that might be elicited from the petitioner should he take the stand. Williams further testified that, although he had not explained to the petitioner that he could testify if he so desired, he had told him that he did not want him to testify.[4] The petitioner never questioned Williams' advice on that matter and never asked to take the stand. Williams opined that the peti-

---

[4] Williams' relevant testimony regarding the issue of whether the petitioner should testify is as follows:

"Q. What, if any, discussions, Mr. Williams, did you have with Mr. Rodriquez regarding his right to testify?

"A. I told him I didn't want him to testify.

"Q. You told him that you didn't want him to testify. Did he question that at all?

"A. No, sir. No. ma'am. I'm sorry.

"Q. He didn't question it?

"A. No.

"Q. Did you tell him—is that how you said it, 'Mr. Rodriquez, I don't want you to testify?'

"A. I don't know how I said it, but the point is, I made it. I said, 'Look, the state's got a lousy case here. Why should we help them, you know. You know, there's no point for you to testify. There's no evidence against you. It's very slender.' . . .

"Q. Mr. Williams, did you ever explain to Mr. Rodriquez that it was his right to choose, to make the decision of whether he should testify or not?

"A. I can't say I gave him a choice. I said—my recollection is that I always told him—I said, 'It won't be necessary for you—I don't want you to testify.' I said, 'They have no proof that you did anything.'

"Q. So, is it fair to say that you never did explain to him that it was his right or his choice?

"A. I can't say that I told him that, you know, 'You can get on the stand,' but I know I told him, 'No, I don't want you to get on the stand.' I did tell him that.

"Q. Okay.

"A. And he—I guess he relied on me. He never asked to take the stand. And it was my impression, it was my view that it wasn't necessary for him to take the stand."

tioner must have relied upon his judgment since he never took the stand.

The petitioner testified that Williams had never told him that it was his right to testify if he so desired and also had never told him that he should not testify. He also maintained that, at the time of his criminal trial, he had not been aware of the right to testify and that, if he had been aware of that right, he would have elected to testify. Devlin, the petitioner's expert witness on criminal law, testified that Williams' representation of the petitioner had been incompetent in that he had only advised the petitioner not to testify and had not told him that the decision whether to testify was ultimately the petitioner's.

The habeas court, in a decision from the bench, granted the petitioner's application for a writ of habeas corpus and ordered a new trial. The habeas court, without specifying upon which ground it was granting the writ, stated: "I find that the petitioner has been denied a fundamental constitutional right. I do find that he was not fully informed that he had a right to take the stand in his own defense, and I find that, as a result, he has been denied his right under [§]54-84 [a][5] of the Connecticut General Statutes. . . . I have to frankly say that Mr. Williams had the best interests of Mr. Rodriquez at heart; however, he just did not really let Mr. Rodriquez make the decision whether or not to testify in the final analysis."

On the day following the decision on the merits of the petition, the habeas court conducted a bond hearing. The state requested clarification of the court's ruling. The habeas court stated that it had based its ruling on the second count, i.e., due process, because Williams

---

[5] General Statutes § 54-84 (a) provides in relevant part: "Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify . . . ."

had "failed to adequately explain and give [the petitioner] the option of testifying or not testifying. He's been denied a fundamental constitutional right."[6] Approximately two weeks later, at a hearing on the state's request for certification to appeal, the habeas court stated that the petitioner had "ineffective assistance because I found that his lawyer really didn't allow him or give him a fair opportunity to testify or not [to] testify. . . . His lawyer directed him not to testify, essentially." After renewed attempts by both parties to have the ruling clarified, the habeas court concluded that the due process and ineffective assistance of counsel claims were essentially the same in this case and declined to clarify its ruling further.[7]

I

The state first claims that the habeas court improperly concluded that since Williams had failed to inform the petitioner of his right to testify, there had been a violation of his constitutional right to due process. The state argues that because the habeas court failed to perform the legal analysis necessary to establish a denial of effective assistance of counsel, it lacked the proper foundation for a conclusion that there had been a violation of the petitioner's right to due process. We agree.

---

[6] The habeas court also concluded that there had been no deliberate bypass of an appeal on that issue.

[7] At the March 8, 1991 hearing held on the state's petition for certification to appeal, the habeas court stated, after the state requested a clarification of the ruling, "you can call it due process or anything else, but in my opinion it is a constitutional right, call it anything you want. One of the fundamental things, one of the few fundamental things that the criminal defendant has is the right to testify or not to testify in his own defense and that choice is his, not his lawyer['s]. Whether you call that due process or whatever else you want to call it, I'm not here to argue that."

When the petitioner asked whether the habeas court had based its decision on both counts, the habeas court replied that it would have to figure that out later. The trial court never returned to this subject during the proceeding.

In a situation such as this, where the petitioner's claim of a violation of due process is so inextricably bound up in the issue of the effectiveness of his trial counsel, we conclude that a separate claim of a violation of the right to due process is not required. If counsel has been ineffective in violation of the mandates of the sixth amendment to the United States constitution, then it follows, a fortiori, that the accused has been deprived of the right to a fair trial and to the concomitant right to due process. "Because it is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected, we believe the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is [through] a claim of ineffective assistance of counsel [pursuant to] *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864] (1984)." *United States* v. *Teague,* 953 F.2d 1525, 1534 (11th Cir. 1992) "[C]ases in which courts have found a denial of a defendant's right to testify almost invariably involve ineffective assistance of counsel or impermissible actions by the trial judge." *United States* v. *Bernloehr,* 833 F.2d 749, 751 (8th Cir. 1987). In the absence of any allegations of impermissible trial court actions, this matter must first be analyzed as one involving the ineffective assistance of counsel. The petitioner, in essence, agrees with this proposition as he maintains that the predicate for his claim of a violation of due process is the claim of ineffective assistance of counsel.

## II

We turn then to the state's determinative claim, i.e., that the habeas court erred in its analysis of the petitioner's claim that he had been denied the effective assistance of counsel. The state argues that the habeas court failed to conduct any analysis of prejudicial impact

as required by *Strickland* v. *Washington,* supra, and that, therefore, there can be no ultimate finding of ineffective assistance of counsel.[8] We agree.

"In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. *Phillips* v. *Warden,* 220 Conn. 112, 132, 595 A.2d 1356 (1991). Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Strickland* v. *Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984). In this context, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' does not require the petitioner to show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' Id., 693. Rather, it merely requires the petitioner to establish 'a probability sufficient to undermine confidence in the outcome.' Id., 694." *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 445–56, 610 A.2d 598 (1992). Because the habeas court failed to consider the prejudicial impact of counsel's alleged ineffective assistance, the required *Strickland* analysis was incomplete. Absent the pred-

---

[8] To the extent th the state claims that the habeas court never concluded that there was ineffective assistance of counsel, we disagree. Although the decision of the habeas court is not a model of clarity, it did state that it was basing its ruling on due process at one point and on ineffective assistance of counsel at another time and left open the possibility that it meant both. As the appellant on this issue, it was the state's burden to present a clear record for appeal. Practice Book § 4061; *J.M. Lynne Co.* v. *Geraghty,* 204 Conn. 361, 376, 528 A.2d 786 (1987).

icate finding of prejudicial impact, there was no basis for concluding that counsel's conduct constituted ineffective assistance.[9]

The remaining question with respect to the *Strickland* analysis of an ineffective assistance of counsel claim is whether the habeas court found that, pursuant to the first prong of the test, Williams' actions constituted deficient performance. The first prong of this test requires that the petitioner show that counsel's performance "fell below an objective standard of reasonableness"; *Strickland* v. *Washington,* supra, 688; and that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id., 687. The habeas court remarked on parts of Williams' performance that it considered to be errors but never analyzed these alleged errors under the *Strickland* criteria to determine whether they constituted deficient performance. The petitioner "was not entitled to error free representation, only representation falling within the range of competence demanded of attorneys in criminal cases . . . ." *Birt* v. *Montgomery,* 725 F.2d 587, 588 (11th Cir. 1984). Without

---

[9] We agree with the vast majority of courts that have addressed this issue that a petitioner who has been denied a right to testify must show prejudice to prevail on his claim for habeas relief. See *United States* v. *Teague,* 953 F.2d 1525 (11th Cir. 1992); *Nichols* v. *Butler,* 953 F.2d 1550 (11th Cir. 1992); *Underwood* v. *Clark,* 939 F.2d 473 (7th Cir. 1991); *Rogers-Bey* v. *Lane,* 896 F.2d 279 (7th Cir. 1990); *Ortega* v. *O'Leary,* 843 F.2d 258 (7th Cir. 1988); *United States* v. *Johnson,* 820 F.2d 1065 (9th Cir. 1987); *United States* v. *Curtis,* 742 F.2d 1070 (7th Cir. 1984); *Alicea* v. *Gagnon,* 675 F.2d 913 (7th Cir. 1982); *Wright* v. *Estelle,* 549 F.2d 971 (5th Cir. 1977); but see *United States* v. *Butts,* 630 F. Sup. 1145 (D. Me. 1986). Although *Butts* holds to the contrary, we note that the facts of the instant case are distinguishable. In *Butts,* the court held that defense counsel's flagrant disregard of the defendant's persistent desire to testify was so fundamentally wrong that such conduct could never be considered harmless error. *United States* v. *Butts,* supra, 1148. In the case at hand, however, the petitioner never told Williams that he wanted to testify nor is there any indication that Williams thought that the petitioner might have wanted to testify.

an analysis of whether Williams' performance had fallen "below an objective standard of reasonableness"; *Strickland* v. *Washington,* supra, 688; the habeas court was without ground to determine that there had been deficient performance.

If, upon remand, the habeas court determines that Williams' performance was constitutionally deficient according to the first prong of *Strickland,* it will be necessary for the habeas court to make some, if not all, of the following determinations in order to determine whether the petitioner was prejudiced, in accordance with the second prong of *Strickland,* by Williams' failure to inform him fully of his right to testify. First, although the petitioner testified that, at the time of his criminal trial, he did not know of the right to testify in his own behalf, did he actually know of this right? Second, although the petitioner stated that he would have testified had he known of the option, in light of his reliance upon Williams' judgment, would the petitioner have taken the stand even if Williams had properly informed him of his right to testify? Third, if the petitioner had testified, was there a reasonable probability that the strength of this testimony would have been enough to "undermine confidence in the outcome?" *Strickland* v. *Washington,* supra, 694.

This third consideration will require the habeas court to weigh the petitioner's credibility and the impact of his proposed testimony upon the jury against the following factors: the possibility of cross-examination with respect to the prior fires at his other properties; the prior fire insurance claims; the attempt to increase his fire insurance at the store; the animosity between his landlord and himself; the pending eviction proceedings; his awareness of the type of bottle used in the incident when the police testified that he could not possibly have

identified the brand of the bottle from his distant vantage point; and his desire for a beer permit for his other store that would have been feasible only if the Agron Superette no longer had a beer permit. The habeas court must also assess to what extent the petitioner's testimony might have been duplicative of his statement to the police that came into evidence at trial.[10]

The judgment is reversed and the case is remanded for a new hearing on the habeas petition.

In this opinion the other justices concurred.

---

[10] The petitioner's testimony at the habeas proceeding with respect to the police statement and the possible content of his testimony at his criminal trial, had he testified, was as follows:

"Q. If you had known that you had a right to take the stand, would you have said anything different from what you told the police originally?

"A. The same thing as always.

"Q. What was the same thing as always? What did you always tell the police?

"A. I told them that there was a fire and I didn't know who did it and I was innocent."