DOUGLAS JOHNSON *v.* COMMISSIONER OF CORRECTION (12146)

DUPONT, C. J., O'CONNELL and FOTI, Js.

Argued November 2, 1993—decision released April 4, 1994

*Donald D. Dakers,* special public defender, for the appellant (petitioner).

*Harry Weller,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Christopher Alexy,* assistant state's attorney, for the appellee (respondent).

DUPONT, C. J. In this appeal from a judgment of dismissal of a petition for habeas corpus, the petitioner claims that the habeas court improperly determined that neither his trial counsel nor his appellate counsel gave him ineffective assistance during his trial or on direct appeal from his conviction for murder, first

degree arson and sixth degree larceny.[1] The petitioner argues that the ineffective assistance of trial counsel was the failure (1) to move to strike the testimony of four witnesses whose tape-recorded pretrial statements had been destroyed, and (2) to object to a comment made during closing argument by the state that was allegedly impermissible under the principles of *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).[2] The claimed ineffective assistance of appellate counsel is the failure on the direct appeal to raise the *Doyle* and *Griffin* issues as prosecutorial misconduct that deprived the petitioner of a fair trial.

The habeas court found that under the standards established by *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the petitioner failed to show that either trial or appellate counsel's performance was ineffective or outside the range of competence displayed by lawyers with ordinary training and skill in the criminal law and that their performance contributed to the convictions or to the affirmance, on appeal, of the judgments of convictions.[3] *Commissioner of Correction* v. *Rodriquez,* 222 Conn. 469, 477, 610 A.2d 631 (1992); *Johnson* v. *Commissioner,* 218 Conn. 403, 424, 589 A.2d 1214 (1991); see *Summerville* v. *Warden,* 29 Conn. App. 162, 170, 614 A.2d 842, cert. granted, 224 Conn. 918, 617 A.2d 172 (1992). The

---

[1] The facts underlying the convictions are set forth in *State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990).

[2] The petitioner also argues that his trial counsel "acted incompetently in failing to object to testimony of a police officer concerning the petitioner's exercise of his post-*Miranda* right of silence." We do not address this issue because it was not addressed by the habeas court and the petitioner's expert witness testified that the failure to object to the testimony was not ineffective assistance of trial counsel. See *Safford* v. *Warden,* 223 Conn. 180, 188, 612 A.2d 1161 (1992).

[3] The test enunciated in *Strickland* v. *Washington,* supra, 466 U.S. 668, applies to ineffective assistance of both trial and appellate counsel. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 458, 610 A.2d 598 (1992).

*Strickland* test "requires a conclusive showing that (1) the attorney's performance was so deficient and the errors made by counsel were so egregious that the attorney was not functioning as counsel . . . and (2) there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . ." (Citations omitted; internal quotation marks omitted.) *Summerville* v. *Warden,* supra, 171, quoting *Ostolaza* v. *Warden,* 26 Conn. App. 758, 761, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

Some facts relating to the petitioner's trial are necessary background to the disposition of this appeal from the habeas court's judgment of dismissal. The petitioner left a bar with the victim and the petitioner's cousin after an evening of drinking. The cousin drove them to the victim's apartment building where the cousin left them at about 2 a.m. The victim's landlord testified that he heard the victim and another person walking upstairs toward the victim's apartment at approximately 2 a.m., and that about one-half hour later he heard what sounded like a body falling out of a bed. A babysitter in the victim's apartment building testified that sometime between 12:30 and 2 a.m., he heard the victim crying and the voice of a "smooth educated man." The babysitter later identified the petitioner's voice as one of two possible voices he had heard that night. The victim was stabbed with a barbecue fork and strangled with an antenna wire, and her room was set on fire. The petitioner had blood stains on his shirt inconsistent with his own blood type and consistent with the victim's blood type. At about 5:15 a.m., some of the contents of the victim's purse were found strewn along a street located between the victim's apartment and the petitioner's house. The barbecue fork and other items from the purse were found in a storm drain located along a path between the victim's apartment and the petitioner's house.

The petitioner did not take the stand. According to the testimony of his trial counsel at the habeas hearing, the petitioner's trial strategy was to emphasize his cooperative attitude with the police to show his lack of guilt and to provide the jury with a reasonable doubt that he had committed the crimes. A police officer testified at trial that during the course of a search of the petitioner's house, pursuant to a warrant, the two had a conversation. The petitioner had been given the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prior to the conversation, but had not yet been arrested, although he was aware that he was a suspect, and had hired an attorney.[4] The petitioner said he would like to talk to the officer but the petitioner's wife entered the room and the conversation stopped. Later, when the officer and the petitioner were alone on the petitioner's front porch at the invitation of the officer, the officer asked if he would still like to talk, and the petitioner said yes. The officer told him that maybe he should talk to his attorney but the petitioner said that he did not need an attorney and wanted to talk to the officer "man-to-man." He said that he would call the officer the next day, which he did. During that telephone conversation, he made an appointment to meet the officer but did not keep it. This testimony was given without objection by defense counsel.[5] The prosecutor reiterated the testimony during closing argument and

[4] The principles of *Doyle* v. *Ohio,* supra, 426 U.S. 610, apply to silence after *Miranda* warnings, regardless of whether the warnings were given before or after arrest. *State* v. *Esposito,* 223 Conn. 299, 318–19, 613 A.2d 242 (1992); *State* v. *Plourde,* 208 Conn. 455, 466, 545 A.2d 1071 (1988). "The fact that the defendant has or has not been arrested at the time of a statement given after *Miranda* warnings is . . . irrelevant." *State* v. *Apostle,* 8 Conn. App. 216, 223 n.5, 512 A.2d 947 (1986).

[5] Although the petitioner offered the testimony of an expert witness as to appellate counsel's performance only, the expert witness testified that neither appellate nor trial counsel was ineffective because of their failure to object to or to raise an issue as to the testimony. See footnote 2.

then commented as follows: "Now what is it that he would have said . . . that he hadn't said in previous statements. Something obviously that he hadn't said back then. And he wanted to talk man-to-man. I would just ask you to consider that in your mind. What additional information he wanted to relay that he had not related previously."

## I

### COMPETENCY OF TRIAL COUNSEL

No expert testimony was proffered in the habeas proceeding as to the trial counsel's lack of effective assistance. The habeas court concluded that without such testimony, the petitioner could not prevail on the claims relating to that counsel's alleged incompetency.

Whether expert testimony is required in a particular case is determined on a case-by-case basis and its necessity is dependent on whether the issues are of sufficient complexity to warrant the use of the testimony as assistance to the habeas court. *Evans* v. *Warden,* 29 Conn. App. 274, 281–82, 613 A.2d 327 (1992). It is the habeas court, therefore, that must initially decide whether, in order to make intelligent findings, it needs expert testimony on the question that it must decide. *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988). A trial court has broad discretion in determining whether expert testimony is needed. See id., 45. In this case, because of the complexity of the issues, the habeas court determined that expert testimony was necessary for a determination of whether the trial counsel's performance was incompetent, and that, without such expert testimony, no finding as to competency could be made. The habeas court also stated that even if it assumed that the claimed delicts of the trial counsel amounted to incompetency, the alleged incompetency did not contribute to the defendant's convictions. We conclude that the habeas court did not

abuse its discretion in requiring expert testimony in this case. A discussion of the issues will suffice to show that the trial court acted properly in concluding that expert testimony was needed and in concluding, having assumed ineffectiveness of counsel, that that ineffectiveness did not contribute to the defendant's conviction.

The petitioner argues that trial counsel should have moved to strike the testimony of four witnesses and that, if he had, the trial court would have had to grant the motion to strike the testimony in order to avoid reversible error. The petitioner claims that counsel was ineffective in failing to move to strike the testimony and that the failure to so move caused the inclusion of the testimony and establishes a probability sufficient to undermine confidence in the guilty verdict.

Some discussion of the direct appeal and the trial are needed to resolve these claims. On the direct appeal from his convictions, the petitioner claimed that the testimony of five witnesses whose tape-recorded statements had been erased should have been stricken. There was an objection at trial to the introduction of one of the witnesses' testimony, but none as to the four other witnesses. It is the testimony of these four witnesses that is the subject of the petitioner's habeas claim. The direct appeal determined that because the four tapes were not destroyed in bad faith, there could be no automatic reversal of the petitioner's convictions because of the destruction.[6] The direct appeal also

---

[6] Appellate counsel argued on the direct appeal that it was not necessary at trial to move to strike the testimony of each of the five witnesses because at the hearing on a motion in limine by the state to determine the effect of the destruction, the petitioner had unsuccessfully argued that all the tapes must be produced or the testimony stricken. Counsel claimed that Practice Book § 4185 did not require further objection. That section provides in pertinent part: "In jury trials, where there is a motion . . . in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully com-

determined that the testimony of the fifth witness, which *was* the subject of a motion to strike by the petitioner, would not require a reversal of the petitioner's conviction because the state had met its burden of proving that it was more probable than not that the state's nonproduction of the tape was harmless. *State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990). That witness provided the most damaging testimony against the petitioner and, had the claim as to the other four witnesses been preserved by trial counsel, it is unlikely that the result would have been different.

The petitioner also claims as ineffective assistance of trial counsel the failure to object to the comment made during closing argument[7] about the defendant's failure to keep an appointment at the police station, asking the jury to consider what he wanted to relay "man-to-man" that he had not related to the police previously.[8]

The petitioner did not take the stand and the comment, therefore, could not have been used directly to impeach his credibility by attacking an explanation or defense offered at trial. *Doyle* v. *Ohio,* suprá, 426 U.S. 610, established the principle that after *Miranda* warnings are given the state may not use the silence of a

plied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon . . . the matter shall be deemed to be distinctly raised at trial . . . without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same." The Supreme Court held, nevertheless, that it was "incumbent on the defendant to seek a definite ruling on the striking of each witness' testimony after each had testified at trial in order fully to comply with the requirements of our rules of practice for preserving his claim of error with respect to each of those witnesses." *State* v. *Johnson,* 214 Conn. 161, 170, 571 A.2d 79 (1990).

[7] The petitioner also claims the failure to raise this claim on his direct appeal was ineffective assistance of appellate counsel.

[8] The petitioner had previously told the police that he accompanied the victim to her apartment but that, after walking her to the door, he went directly home, never entering her apartment.

defendant, which is "insolubly ambiguous," to impeach the defendant's testimony. See *State* v. *Apostle,* 8 Conn. App. 216, 225, 512 A.2d 947 (1986). Nor may the silence be used to imply guilt or to indicate a consciousness of guilt. *State* v. *Cooper,* 227 Conn. 417, 437, 630 A.2d 1043 (1993).

The petitioner is not claiming that the testimony of the police officer recounting the petitioner's expressed desire to talk to the police was a comment on silence. The alleged comment on silence, according to the petitioner, was the asking of the jury what he would have said at trial or at the police station had he broken his silence. See *State* v. *Canty,* 223 Conn. 703, 613 A.2d 1287 (1992); *State* v. *Esposito,* 223 Conn. 299, 613 A.2d 242 (1992); *State* v. *Leecan,* 198 Conn. 517, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Pellegrino,* 194 Conn. 279, 480 A.2d 537 (1984); *State* v. *Apostle,* supra, 8 Conn. App. 216.

The strategy of the petitioner was to induce the jury to believe because of his cooperation with the police that someone other than he had committed the crimes. The comment does not attack that strategy but does imply that if the petitioner had kept his appointment with the police officer, he might have corrected his original statement that he had not entered the victim's apartment on the night of her murder and confessed that he had entered the apartment. Expert opinion would have helped the trial court to determine whether the failure to object to the comment was ineffective assistance of counsel or trial strategy to show the jury the cooperative attitude of the petitioner.

The petitioner also claims that trial counsel was ineffective because he failed to object to the comment even though it was impermissible under *Griffin* v.

*California,* supra, 380 U.S. 609.[9] The fifth and four-teenth amendments to the United States constitution forbid comment by the prosecution or the court about a defendant's failure to testify in his own behalf. Id.; *State* v. *DeMartino,* 7 Conn. App. 292, 508 A.2d 809 (1986); see *State* v. *Arline,* 223 Conn. 52, 612 A.2d 755 (1992). The Connecticut legislature has affirmed this constitutional right by mandating that, unless the accused requests otherwise, the court must instruct the jury that it may draw no unfavorable inferences from an accused's failure to testify. General Statutes § 54-84 (b).

The test to determine whether the comment violated the fourteenth amendment is whether a jury would nat-urally and necessarily understand the remarks to be a comment on the failure of the accused to testify. *State* v. *Correia,* 33 Conn. App. 457, 636 A.2d 860 (1994). Here, the remarks called on the petitioner for an expla-nation that only he could provide and implied that he would have expanded his previous statement. It was not, however, a direct comment on his failure to tes-tify but a comment on his failing to speak to the police. Even if the comment was constitutionally impermissi-ble, as a *Griffin* violation, the final question to be answered is whether the failure of trial counsel to object contributed to the petitioner's conviction. Presumably, the charge required by § 54-84 (b) was given. If so, the jury would have had to deal with two conflicting themes, namely, the instruction to draw no unfavor-able inferences from the failure of the defendant to tes-tify, and the comment by the state that might be

[9] This claim of misconduct by the state's attorney could have been raised on direct appeal by use of the principles of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), because it was a constitutional claim and the record was sufficient for review. Because it was reviewable, it is not certain that the petitioner could be prejudiced by this deficiency in trial counsel's per-formance. See *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 446 n.3, 610 A.2d 598 (1992).

construed as asking the jury to question why the defendant did not take the stand to explain why he did not keep his appointment with the police. Expert testimony would have assisted the trial court in determining whether the claimed delict was outside of the range of competence displayed by lawyers with ordinary training and skill and if there was a probability sufficient to undermine confidence in the verdict. The court was correct in concluding that the petitioner should not prevail without expert testimony.

## II

### COMPETENCY OF APPELLATE COUNSEL

The petitioner also argues that appellate counsel improperly failed to claim on appeal that the comment in the state's closing argument about the testimony of the police officer violated the principles of *Doyle* v. *Ohio,* supra, 426 U.S. 610, and *Griffin* v. *California,* supra, 380 U.S. 609, thereby interfering with the petitioner's right to a fair trial. The petitioner produced an expert witness whose opinion was that the failure to raise these issues on appeal was ineffective assistance of counsel.

The test is not whether the issue, had it been raised on direct appeal, *might* have entitled the defendant to relief but whether the failure to raise the issue resulted in a miscarriage of justice. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 461, 610 A.2d 598 (1992). The petitioner's expert witness as to the ineffectiveness of appellate counsel testified that a reasonably competent appellate counsel would have raised the unpreserved claims that the remarks of the prosecutor improperly commented on both the petitioner's right to remain silent after receiving *Miranda* warnings and his decision not to testify at trial.

The comment implicated the petitioner's right to a *Miranda* induced silence, and possibly his right not to testify. Any comments about the failure to testify are forbidden because that silence implicates a defendant's due process as well as fifth and fourteenth amendment rights under the United States constitution. *Griffin* v. *California,* supra, 380 U.S. 609. The reasons for the petitioner's failure to testify on his own behalf at trial or his failure to break a post-*Miranda* silence may have been his guilt, his reliance on the state's assurance that he could remain silent, his reliance on his own knowledge of his constitutional right not to incriminate himself, his timidity or nervousness, or an instruction from his lawyer. On direct appeal, if the issue had been raised, the comment of the prosecutor might have been deemed violative of *Griffin.* See *State* v. *Arline,* supra, 223 Conn. 67; see also *Doyle* v. *Ohio,* supra, 426 U.S. 610. An analysis would have then been undertaken to determine if it was clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible comment. *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); see also *State* v. *Apostle,* supra, 8 Conn. App. 227.

In order to prevail on a constitutional claim of ineffective assistance of counsel by way of habeas, the petitioner must establish both a deficient performance and actual prejudice. *Commissioner of Correction* v. *Rodriquez,* supra, 222 Conn. 477. "[T]o establish prejudice resulting from his appellate counsel's deficient performance, he must establish that, as a result of that performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal." *Bunkley* v. *Commissioner of Correction,* supra, 222 Conn. 454. The petitioner must establish that he would have been entitled to a reversal on appeal and that the deficiency raises a probability sufficient to undermine confidence in the verdict. A petitioner must

establish both and, if either is lacking, the petitioner is not entitled to habeas relief. Id., 454. The test for the first prong—would a reversal and a new trial have been required on direct appeal—depends on whether the state could show that the constitutional violation was harmless beyond a reasonable doubt.[10] The test for the second prong—whether a petition for habeas requires the petitioner's conviction to be set aside and a new trial to be awarded—depends on whether the deficiency in appellate counsel's performance was so egregious as to have burdened the petitioner by an unreliable determination of guilt. A successful petition for habeas corpus is a "bulwark against convictions that violate fundamental fairness." (Internal quotation marks omitted.) *Brecht* v. *Abrahamson,*     U.S.    , 113 S. Ct. 1710, 1719, 123 L. Ed. 2d 353 (1993).

"The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence." Id. Different problems prevail when a conviction is set aside on direct appeal than when a conviction is set aside following a habeas writ. "These considerations counsel strongly in favor of requiring a habeas corpus petitioner who seeks to establish prejudice from his appellate counsel's performance to show that, as a result of the performance, it is reasonably probable

[10] The standard in federal habeas courts on review of a claim that a conviction is constitutionally flawed because of a constitutional trial error is no longer that of harmless beyond a reasonable doubt; see *Chapman* v. *California,* supra, 386 U.S. 18; and now is based on *Kotteakos* v. *United States,* 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946), with the burden of proof on the petitioner to show that the error had a substantial and injurious effect or influence in determining the jury verdict. *Brecht* v. *Abrahamson,*     U.S.    , 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). Although *Brecht* concerned a *Doyle* silence, *Brecht* applies to all constitutional errors, of the trial type, when reviewed by way of a habeas corpus writ. *Brecht* does not apply to claims of ineffective assistance of counsel raised by way of habeas.

that he remains burdened by an unreliable conviction." *Bunkley* v. *Commissioner of Correction,* supra, 222 Conn. 463.

The validity of the jury verdict here was not undermined due to the failure of appellate counsel to raise a *Griffin* or *Doyle* issue. Even if the petitioner could establish that he would have been entitled to a reversal of his conviction had the issue been raised on appeal, he has not shown that the error was egregious enough to warrant the extraordinary remedy of habeas corpus. Thus, he cannot prevail on his claim of ineffective assistance of appellate counsel.

The judgment of the habeas court is affirmed.

In this opinion the other judges concurred.