[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On August 9, 1994, the petitioner pleaded guilty under Alford[1] in docket CR6-388710 to one count of Felony Murder in violation of General Statutes § 53a-54c, one count in docket CR6-388710 of Carrying a Pistol Without a Permit in violation of General Statutes § 29-35, and one count in docket CR6-396431 of Carrying a Weapon in a Correction's Institution in violation of General Statutes § 53a-174 (a). 2nd
Am. Pet., at 1. The Alford guilty pleas "were entered pursuant to a plea agreement, in exchange for an agreed-upon recommendation for sentences in CR6-388710 of 27 years to serve on the Felony Murder count and a concurrent sentence on the charge of Carrying a Pistol Without a Permit; and in CR6-396431 of one and one half years to serve consecutive to the first two charges." Id., at 2. On October 14, 1994, the petitioner was sentenced to a total effective sentence of twenty-eight and one half years to serve. Id.
The petitioner filed a pro se petition for a writ of habeas corpus on August 25, 1995, which was amended on April 2, 1996 and again amended on May 10, 1996. In his Second Amended Petition, the petitioner raises two claims of ineffective assistance of trial counsel. In count one, the petitioner alleges that he "was not informed by counsel that he will have to serve the mandatory term of his sentence, and [he] was under the CT Page 6068 belief that he will not have to serve the entire twenty-eight and one half years of his sentence." Id., at 2. The petitioner also claims that his pleas "were entered under the mistaken belief that he would not have to serve the entire term of the sentence," and "[b]ut for the mistaken belief of the requirements to serve, [he] would not have entered the guilty pleas . . . and would not have accepted the total effective sentence of twenty-eight and one half years." Id., at 2-3. Consequently, the petitioner alleges that his pleas were not knowingly, intelligently and voluntarily entered. Id., at 3.
The petitioner's second count alleges that trial counsel failed to adequately investigate into the applicable law, "including: 1) the law relating to the prosecution's proof of the elements of the offense; 2) the law relating to available theories of defenses; and 3) the law relating to the effect of statutory provisions concerning the calculation of time credits, early release programs and the petitioner's eligibility for such credits and programs, and the total amount of actual time the petitioner would be required to serve if he entered a plea of guilty in exchange for a specific recommended sentence." Id., at 3-4.
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7, 759 A.2d 118 (2000). "Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal citations and quotations omitted.) Id., 317-8. Alsosee Commissioner of Correction v. Rodriguez, 222 Conn. 469, 477,610 A.2d 631 (1992).
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in CT Page 6069 which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, 151, 662 A.2d 718 (1995).
"The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. The court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal citations and quotations omitted.) Id., 156-7.
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [47 Conn. App. 253, 264,704 A.2d 807 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998)]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998). "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." Nardini v. Manson, supra, 207 Conn. 124.
The petitioner in count one "claims that his special public defender Donald Dakers induced him to enter guilty pleas after informing him that he [would] not have to serve the entire 28 1/2 years he was sentenced to which is in contradiction to what [the] petitioner later discovered. Petitioner would not have entered the above-referenced guilty pleas had he known that he [would] be required to served the entire term." Pet'r CT Page 6070 Br., at 1. "More specifically, [the] petitioner . . . was under the impression that he will have to serve half the time and then be released . . . [and] did not understand the sentencing portion of the plea and/or was acting pursuant to counsel's erroneous advice that he will have to serve less than the time he was sentenced to." Id., at 3.
The transcript of the change of plea shows that the petitioner was canvassed by the sentencing court regarding each of the three counts the petitioner pleaded guilty to, and that the maximum exposure for all three counts was eighty-five years, which would have included a twenty-five year minimum. Resp't Ex. A (Tr. of Aug. 9, 1994), at 11. The petitioner testified at the habeas trial that he had enough time to discuss his guilty pleas with Attorney Dakers prior to entering the guilty pleas. Tr. (Jan. 17, 2002), at 4. The petitioner also testified that Attorney Dakers explained the 28 1/2 year sentence to him as follows: of the 28 1/2 years, eight would be probation, and that of the remaining twenty years, the petitioner would serve no more than ten years. Id., at 5. Additionally, the petitioner testified that he would not have entered a guilty plea if his trial counsel had told him he would have to serve substantially more time than the ten years, and that he would have gone to trial because the 28 1/2 year sentence was too much and probably would have received a lesser sentence via a trial. Id., at 5-6.
The petitioner's mother, Cynthia Caple, was appointed guardian ad litem during the underlying criminal matter, although the petitioner was eighteen years old at the time of plea. Id. at 2. Ms. Caple testified at the habeas corpus trial that she had discussions with Attorney Dakers before the petitioner entered his guilty pleas and was present when her son pleaded guilty. Tr. (Jan. 17, 2002), at 29. Ms. Caple also testified that it was her understanding from these discussions that the petitioner would only serve ten years if he took the deal that the state had offered. Id. Based on her understanding that the petitioner would only serve ten years, Ms. Caple complied with Attorney Dakers' request that she speak to her son about the risk of going to trial and that he should accept the offered plea agreement. Id., at 30. Lastly, Ms. Caple testified that she was present at the sentencing and was surprised at hearing the sentencing judge impose a 28 1/2 year sentence, after which Attorney Dakers allayed her concerns by telling her that the petitioner would not serve all that time. Id., at 31.
The final witness to testify at the habeas corpus trial was Attorney Donald Dakers. Attorney Dakers testified that at the time of the petitioner's underlying criminal matter, he had several decades of experience, including fifteen to twenty years as an attorney with the public defender's office in New Haven, Part A. Id., at 36. During his many years of practicing criminal law, Attorney Dakers had handled many CT Page 6071 felonies, including murders, prior to representing the petitioner. Id. Attorney Dakers testified that he and the petitioner had many discussions prior to the plea agreement and "that it was [his] strong opinion that [the petitioner] should plead guilty . . . and not [go] to trial." Id. The opinion that the petitioner should accept the plea agreement was based on Attorney Dakers' conclusion that the state had a strong case against the petitioner for the felony murder charge. Id., at 40. Attorney Dakers also testified that as best as he could recall, the petitioner has been the only client of his who pleaded guilty to a murder charge. Id. "I felt it was such a strong case," according to Attorney Dakers, "that he [the petitioner] had no alternative to plead[ing] guilty." Id.
The petitioner in this case was arrested by warrant. Id., at 42 and Resp't Ex. D. The petitioner and a co-participant both gave incriminating statements to the police. Resp't Ex. G and E. Additionally, a third party witness gave a statement to the police which indicated that shortly before the offenses occurred, that the petitioner and the co-participant were going to hold up someone at gunpoint. Tr. (Jan. 17, 2002), at 45 and Resp't Ex. H, at 3. Based upon the totality of circumstances surrounding the petitioner's underlying criminal matter, counsel advised his client that it would be better to strike a plea bargain and not go to trial. Tr. (Jan. 17, 2002), at 45.
Attorney Dakers testified that the petitioner, however, "was constant about not wanting to plead guilty," and that the petitioner did not realize the risk that he would take by going to trial, as well as the potential sentence he faced. Id., at 41. The petitioner's attitude prompted Attorney Dakers to have discussions with Ms. Caple and request that she speak to her son about accepting the agreement and entering a guilty plea. Id. Attorney Dakers' request to Ms. Caple, again, was based on his assessment that it was in the petitioner's best interest to plead guilty, that he was not at all optimistic about the trial having a successful outcome, and that if the petitioner went to trial there was potential for a sentence substantially longer than 28 1/2 years. Id., at 41-2.
Attorney Dakers could not specifically recall discussing with his client the actual time that would be served on the sentence of 28 1/2 years as a result of the guilty plea. Id., at 37. Attorney Dakers was questioned during the habeas corpus trial whether he "could . . . imagine [himself], realistically, at any point, telling [the petitioner] that he was only going to do ten years on [the 28 1/2 year] sentence." Id., at 46. Attorney Dakers responded that he could not, that he "may have talked about the chance [the petitioner] had to reduce that sentence with good time credits, or whatever was available at that time," but that he would not advise his client that he could cut his sentence to less than half CT Page 6072 the imposed term. Id., at 37 and 46. He denied as inaccurate the assertions by the petitioner and his mother, Ms. Caple, that he told the petitioner or his mother that the petitioner would only serve ten years out of the 28 1/2 year sentence. Id., at 38. Based on the transcripts of the change of plea and the sentencing, the lengthy mandatory minimum sentence for felony murder, as well as the testimony proffered during the habeas corpus trial, this Court finds Attorney Dakers' testimony to be credible and does not find either the petitioner's or Ms. Caple's testimony in regard to their assertions as to the ten years to serve to be credible.
The petitioner has alleged in count one of his Second Amended Petition that he was not informed by counsel that he would have to serve the mandatory term of his sentence, and he was under the belief that he would not have to serve the entire twenty-eight and one half years of his sentence. The petitioner has not shown that Attorney Dakers failed to advise him of the mandatory term of his sentence. Even assuming, arguendo, that trial counsel did not so advise his client, the petitioner was advised of the mandatory minimum terms by the canvassing court when the petitioner entered his Alford guilty pleas. Resp't Ex. A, at 11. The petitioner has not proven that he would not have pleaded guilty and insisted on going to trial. And even though the petitioner argued in his brief "that he is able to establish prejudice by showing that he was under the influence of drugs at the time of the alleged robbery and felony murder and that his learning disabilities affected his judgment;" Pet'r Br., at 3; there was no credible evidence offered to support these claims. Consequently, the petitioner has failed to show both that his attorney's performance was deficient and that he was prejudiced.
The petitioner's second count alleges that trial counsel failed to adequately investigate into the applicable law relating to the prosecution's proof of the elements of the offense, the available theories of defenses, and the effect of statutory provisions concerning the calculation of time credits, early release programs and the petitioner's eligibility for such credits and programs, and the total amount of actual time the petitioner would be required to serve if he entered a plea of guilty in exchange for a specific recommended sentence. There is no evidence in the record to support the claim that counsel failed to adequately investigate into the applicable law relating to the prosecution's proof of the elements of the offense. And as the Court has already discussed the time-related claims in count one, the Court will limit its discussion of count two to the prosecution's proof and available theories of defenses.
The petitioner argues that "[h]ad petitioner's trial counsel advanced a lack of intent defense to the crime of felony murder, coupled with CT Page 6073 petitioner's learning disabilities and the failure of the school system to provide needed and appropriate services to petitioner, the results would have been different in that the sentence received would have been shorter, as he would in all likelihood been convicted of a lesser offense than the felony murder." Pet'r Br., at 4. The petitioner's claim that counsel failed to pursue a lack of intent defense is premised on the additional claim that the petitioner was under the influence of drugs at the time the offenses were committed.
The petitioner testified at the habeas corpus trial that he was under the influence of "WET," which the petitioner explained is marijuana mixed with embalming fluid, at the time he committed the offenses. Tr. (Jan. 17, 2002), at 20; see also Resp't Ex. G, at 2 and 9. The petitioner also testified that it was not his intent to kill the victim, that at the time the robbery was committed it "looked like [the victim] was reaching and I shot him[.]" Id., at 21. Additionally, the petitioner testified that he disclosed to Attorney Dakers that he was under the influence of drugs.Id., at 20. Attorney Dakers confirmed that the petitioner informed him of being under the influence of drugs at the time of the shooting. Id., at 38-9. Attorney Dakers also was aware at the time he represented the petitioner that the petitioner's statement to the police indicated that the shooting was the result of drug turf war. Id., at 39.
The petitioner gave a statement to police in which he denied having anything to do with the shooting and that he was not there when the shooting occurred. Resp't Ex. F, at 11. In another statement given to police, the petitioner admitted pulling the trigger and shooting the victim; Resp't Ex. G, at 2, 5, 8 and 13; but denied that his intent had been to rob someone, that instead his intent was to sell drugs. Id., at 11. The petitioner eventually entered a plea of guilty under Alford to felony murder resulting from the robbery attempt. Resp't Ex. A. However, the petitioner testified at the habeas corpus trial that it was his position that the murder did not happen in the commission of a robbery and that he should not have been convicted of felony murder. Tr. (Jan. 17, 2002), at 20. The petitioner also testified, in an attempt to explain what occurred when the murder happened, that it was not his intention to kill the victim and that it looked like the victim was "reaching, and I shot him[.]" Id., at 21.
The record before this Court also contains conflicting evidence regarding the alleged use of drugs prior to the murder. In his second statement to the police, the petitioner indicated that he and John Brown, the co-participant, were "getting drunk and smoking that Ill."[2]
Resp't Ex. G, at 2 and 9. John Brown's statement to the police, however, contradicts the petitioner's claim that they were getting drunk and using drugs. John Brown told the police that he and the petitioner were smoking CT Page 6074 cigarettes, and that when the victim came towards them, that the petitioner put down his cigarette, ran up to the victim and shot him in the back. Resp't Ex. B, at 2. John Brown specifically denied that he and the petitioner had been drinking prior to the shooting. Id., at 7.
Attorney Dakers testified that the petitioner "probably was insistent about having been high." Tr. (Jan. 17, 2002), at 41. Attorney Dakers additionally testified that if the petitioner had been so high that he could not form a specific intent, that the affirmative defense of intoxication could have been argued premised on that the petitioner did not intend to commit attempted robbery and could not have been guilty of the subsequent murder could have been pursued. Id., at 40-1. Because there were two witnesses who stated that the petitioner had said that he was going to rob someone, as well as the absence of support for an intoxication defense, Attorney Dakers concluded that the state had a very strong case and advised his client that it would be better to strike a plea bargain. Id., at 45.
"The . . . yardstick [for measuring counsel's performance] is whether counsel's performance was reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) Ramos v. Commissionerof Correction, 67 Conn. App. 654, 665, 662 A.2d 718, cert. denied,260 Conn. 912, ___ A.2d ___ (2002). "A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial." Copasv. Commissioner of Correction, supra, 234 Conn. 154. This Court has reviewed the evidence in this matter and finds that the petitioner has not met his burden of proving that Attorney Dakers' conclusions and advice were not within the range of competence displayed by lawyers with ordinary training and skill in the criminal law.
The petitioner in this case must also show that he would have insisted on going to trial and that the intoxication defense he claims would likely have been successful at trial. The petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. The petitioner has neither shown that the intoxication defense was not identified as a result of counsel's deficient performance nor that the intoxication defense would have been successful at trial. Consequently, this Court concludes that the petitioner's claims in count two are also without merit.
For all the foregoing reasons, the petitioner has failed to prove the claims raised in both counts of the Second Amended Petition. The petition CT Page 6075 seeking habeas corpus relief, therefore, is denied.
GRAZIANI, JUDGE