ANDRES RODRIQUEZ *v.* COMMISSIONER
OF CORRECTION
(12237)

LAVERY, FREEDMAN and SPEAR, Js.

Argued February 22—decision released August 23, 1994

*Deborah Del Prete Sullivan,* assistant public defender, for the appellant (petitioner).

*Jacqueline J. Footman,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Christopher Alexy,* assistant state's attorney, for the appellee (respondent).

SPEAR, J. The petitioner appeals from the denial of his petition for a writ of habeas corpus claiming ineffective assistance of counsel. We affirm the judgment of the habeas court.

The petitioner was convicted after a jury trial of arson in the first degree in violation of General Statutes §§ 53a-111 and 53a-8, and sentenced to a term of imprisonment of thirteen years. He appealed, claiming, inter alia, that there was insufficient evidence to sustain a conviction and that the trial court improperly failed to conduct an inquiry into trial counsel's alleged conflict of interest arising from dual representation of the petitioner and his wife, who had been a defense witness at the criminal trial. The Supreme Court affirmed the conviction in *State* v. *Rodriquez,* 200 Conn. 685, 513 A.2d 71 (1986).

The petitioner then filed a petition for a writ of habeas corpus, alleging ineffective assistance of counsel and violation of due process under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution in that his trial counsel had not adequately informed him of his right to testify at trial. The habeas court granted the petition and ordered a new trial. The state's petition for certification to appeal was denied by the habeas court. The state then filed a writ of error.[1] In *Commissioner of Correction* v. *Rodriquez*, 222 Conn. 469, 610 A.2d 631 (1992), the Supreme Court, after determining that the petitioner's claim of violation of due process should not be considered separately from his claim of ineffective assistance of counsel, reversed the habeas court's judgment granting the petition because that court had failed to conduct an appropriate inquiry as to whether trial counsel's assistance was both deficient and prejudicial.[2] Such an inquiry is required pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The case was remanded for a new hearing with a directive that the habeas court conduct a proper *Strickland* analysis.

---

[1] Two recent decisions released by our Supreme Court indicate that in the future such writs will be considered procedurally improper and will not be entertained. In *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994), the court held that General Statutes § 52-273 deprives the court of subject matter jurisdiction over a writ of error brought to review a habeas court's denial of certification to appeal, notwithstanding the provision of Practice Book § 4143 to the contrary. In a companion case, *Carpenter* v. *Meachum,* 229 Conn. 193, 640 A.2d 591 (1994), the court upheld the constitutionality of § 52-273. See also *Simms* v. *Warden,* 230 Conn. 608, 646 A.2d 126 (1994).

Subsequent to the release of those decisions, the defendant in this case filed a motion to vacate *Commissioner of Correction* v. *Rodriquez,* 222 Conn. 469, 610 A.2d 631 (1992), with the Supreme Court. That motion was denied and therefore the decision stands.

[2] The first habeas court found that trial counsel failed to inform the petitioner adequately of his right to testify, but did not conduct an inquiry as to whether that failure was prejudicial to the outcome of the proceedings.

The habeas court held a second hearing, at which it considered the following facts.[3] The underlying criminal conviction was for the firebombing of a grocery store owned and operated by the petitioner in his wife's name. The fire was started by a Molotov cocktail that was thrown against the front window of the grocery store. The bottle did not fully penetrate the window and landed beneath it between a wire fence and the building. The outside of the building was scorched and there was damage inside the store caused by smoldering boxes. No insurance claim was filed.[4] There was testimony by a neighbor that she saw a Hispanic male with an Afro throw the Molotov cocktail, and that it was definitely not the petitioner.[5]

Evidence against the petitioner included the existence of a gallon container of gasoline located inside the store where the Molotov cocktail would have hit if it had fully penetrated the store window. The container could have been placed there only after the store was closed, which could have been done only by someone who had keys to the store. The only two persons who possessed keys were the petitioner and his employee, who was not suspected. The employee testified that at the time he closed the store, the gasoline container was definitely not there. The building in which the grocery store was located was owned by Mario LaPrieta, who lived with his wife directly above the store. LaPrieta was asleep in a bedroom directly

---

[3] The only issue before the second habeas court was the claim of ineffectiveness of trial counsel. By stipulation, the trial transcripts and exhibits of the prior habeas hearing and underlying criminal trial were admitted into evidence at the second habeas hearing.

[4] The petitioner's insurance agent testified that a few months before the fire, the petitioner had attempted to increase the amount of his fire insurance on the store from $40,000 to $45,000.

[5] There was evidence that before the fire, the petitioner was in contact with a Hispanic male with a large Afro, although that person was never located or identified.

over the store the morning of the firebombing. The LaPrietas had no keys to the store and had no access to the store after it was closed.

The landlord-tenant relationship between LaPrieta and the petitioner was less than harmonious. The petitioner had taken over the store from a previous tenant without LaPrieta's consent. LaPrieta had commenced summary process proceedings against the petitioner, which were scheduled for trial on March 22, 1982, the day after the fire. Defense counsel implied at trial that someone such as LaPrieta could have entered the store through a backdoor without setting off the burglar alarm.[6]

There was also evidence that the petitioner wanted a beer permit for another grocery store he owned. The lease for the store that was firebombed, however, contained a provision that the permit for that address could not be transferred. Further, due to the close proximity of the two grocery stores, local zoning regulations prevented the petitioner from obtaining a beer permit for his second store.

Police officials testified that the petitioner, who arrived at the scene of the fire shortly after the incident, was fully dressed, unusually calm, and was able to identify the smoking Molotov cocktail as a Coca-Cola bottle from a distance of fifty feet. No one had told the petitioner what kind of bottle had been used, and he was standing too far away to identify it visually.

The petitioner claims that he was denied effective assistance of counsel because his trial counsel did not fully inform him that he had a right to testify if he so chose, and that he would have testified had he known

---

[6] As the second habeas court noted, LaPrieta and his wife were asleep in the apartment above the grocery store and would have been in severe jeopardy had the bottle penetrated the window.

of such a right.[7] The petitioner further claims that if he had testified at his criminal trial, he would have explained the suspicious circumstances surrounding his identification of the Coca-Cola bottle. The evidence at trial included the petitioner's sworn written statement in which he twice indicated that he had identified the bottle as a Coca-Cola bottle from a distance of fifty feet. At the second habeas hearing, the petitioner testified that he actually made the identification from a distance of five to ten feet with the aid of a streetlight and would have so testified at the prior trial if he had been apprised of his right to testify. The petitioner claims that, at the time the investigator took his statement, he did not regard the distance as important and that the investigator never gave him an opportunity to explain how close he was initially.[8] He made no mention of this proposed testimony at his first habeas proceeding,[9] however, and admitted that he never specifically brought it to the attention of trial counsel during his criminal trial. The petitioner claims he did not know he had the right to give testimony until after he had spent one to two years in prison.[10]

---

[7] At the second habeas proceeding, the petitioner produced as an expert on the deficiency of performance issue Todd D. Fernow, director of the University of Connecticut School of Law Criminal Clinic, who testified that jurys tend to draw adverse inferences when criminal defendants do not testify.

[8] The petitioner's statement to the police shows that he was asked: "Mr. Rodriquez, when you saw the Coke bottle with the fire about how far away were you?" The petitioner responded: "Well, I was across the street at the time, and that is approximately fifty feet."

The petitioner was later asked: "Mr. Rodriquez, how did you know that it was a Coke bottle that was on fire on the sidewalk between the fence and the store?" The petitioner responded: "I saw the bottle from outside and you could see it from about fifty feet because it was on fire."

[9] At his first habeas hearing, the petitioner testified that if he had known that he had a right to testify at his criminal trial, he would have merely asserted his innocence. He made no mention of explaining how he knew the brand name of the bottle.

[10] The petitioner claims to have learned of his right to testify from books in the library at the correction facility in Somers. The petitioner claims that

The trial attorney testified at both habeas proceedings that although he could not recall specifically explaining to the petitioner that he could testify if he so desired, he did tell the petitioner that he did not want him to testify. He had several strategic reasons for not wanting the petitioner to take the stand: (1) the state was aware that there had been fires and subsequent insurance claims at other properties owned by the petitioner and counsel was concerned that the state may have been prepared to cross-examine the petitioner as to those matters;[11] (2) counsel believed the jury would give great weight to the testimony of the neighbor who had seen someone other than the petitioner throw the Molotov cocktail; (3) counsel believed that the petitioner had a strong case and that the state should be required to carry its heavy burden; and (4) counsel did not want to be surprised by anything that might be elicited from the petitioner should he take the stand.

The trial attorney also testified that although he could not recall specifically advising the petitioner that he could testify if he so desired, it was his firm opinion, based on their discussions and his prior representation of the petitioner[12] that the petitioner knew he had that right. The petitioner never questioned his counsel's advice on the matter and never asked to take the stand.

The second habeas court subsequently issued a memorandum of decision dismissing the petition. The petitioner's petition for certification to this court was granted and this appeal followed. The petitioner claims

other inmates helped him locate books about arson and translated them for him. The petitioner was unable to identify the books that he had used.

[11] Apparently neither of these fires was of a suspicious nature, one having been caused by a fan in a tenant's apartment and the other by a child playing with matches. The subject of the state's cross-examination of the petitioner would have depended on the petitioner's direct testimony.

[12] Trial counsel had maintained a professional relationship with the petitioner for several years and had represented him in some civil matters.

on appeal that (1) the habeas court improperly concluded that counsel's performance was not deficient and failed to answer the Supreme Court mandate that it conduct an appropriate analysis under *Strickland,* (2) the habeas court's conclusions were not supported by the evidence, and (3) the habeas court incorrectly concluded that counsel's assistance was not ineffective. Our analysis of the second habeas court's compliance with *Strickland* is dispositive of all three of the petitioner's claims, and the issues therefore need not be addressed separately.

*Strickland* v. *Washington,* supra, 466 U.S. 687, provides a two-prong analysis for claims of ineffective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as the counsel guaranteed to the criminal defendant under the sixth amendment, which in turn requires a showing that counsel's representation fell below an objective standard of reasonableness. Id., 687–88. Second, the petitioner must show that counsel's errors were so serious as to render the result of the trial unreliable. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In this context, a reasonable probability does not require a showing that counsel's deficient conduct more likely than not altered the outcome in the case, but rather requires that the petitioner establish a probability sufficient to undermine confidence in the outcome. Id., 694. The petitioner must satisfy both prongs of the analysis to prevail on his ineffectiveness of counsel claim.

We first consider the proper scope of our review. The facts found by the habeas court may not be disturbed unless such findings are clearly erroneous. When, as in this case, those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review. *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 877 (1991); *McIver* v. *Warden*, 28 Conn. App. 195, 203, 612 A.2d 103, cert. denied, 224 Conn. 906, 615 A.2d 1048 (1992). The petitioner's claims that the habeas court (1) made an improper legal conclusion as to counsel's performance, (2) failed to answer the Supreme Court's mandate, (3) made findings that were unsupported by the evidence, and (4) improperly found that trial counsel was not ineffective, are simply not supported by the facts set out in the trial court's memorandum of decision or the record as a whole.

In a properly conducted *Strickland* analysis, the court must first determine whether the performance of trial counsel was deficient. As the second habeas court notes in its memorandum of decision, the petitioner does not allege that the quality of his trial counsel's representation, the conduct of the trial, the attorney's appreciation of the state's case, or the attorney's advice was deficient.[13] Rather, the petitioner's sole complaint is counsel's alleged failure to advise him adequately of his right to testify. In order for that alleged failure to be considered deficient under *Strickland*, the petitioner must first establish such failure and then show that such a failure is not reasonably competent or within the range of competence displayed by lawyers with ordi-

[13] The habeas court also noted that in the petitioner's direct appeal, he unsuccessfully asserted an ineffectiveness of counsel claim based on counsel's alleged conflict of interest in permitting the petitioner's wife to comply with certain pretrial discovery requests concerning the business records of the firebombed grocery store.

nary training and skill in criminal law. *Summerville* v. *Warden,* 29 Conn. App. 162, 170, 614 A.2d 842 (1992), rev'd on other grounds, 229 Conn. 397, 641 A.2d 1356 (1994). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland* v. *Washington,* supra, 466 U.S. 690.

The sixth amendment does not entitle criminal defendants to error free representation. *Commissioner of Correction* v. *Rodriquez,* supra, 222 Conn. 478. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland* v. *Washington,* supra, 466 U.S. 689. A fair assessment of attorney performance at trial requires that the reviewing court make every effort to avoid the distorting effect of hindsight. Id., 689. In fact, the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance. Id.

With that presumption in mind, we turn to the case at hand. The record as a whole shows that the petitioner did not present any evidence to establish that trial counsel had *never* told him that he had a right to testify. Counsel testified that he had no *specific recollection* of informing the petitioner that he had a right to testify, not that he *never* told him of his right to testify. Moreover, counsel did testify that it was his opinion, based on his recollection of conversations with the petitioner during the trial, that the petitioner was aware of that right. There would have been no need for any discussion between the petitioner and his trial counsel about the pros and cons of the petitioner's testifying unless it was implicitly understood that the petitioner had the right to testify. Furthermore, the transcript of the petitioner's testimony at the second habeas proceeding gives the impression that, although he never specifi-

cally requested to testify, he was aware that he could.[14] The petitioner has merely shown that his attorney, testifying without benefit of his trial records, cannot recall specifically informing him of his right to testify.

Criminal defendants are required to take some affirmative action regarding their right to testify before they can claim that they have been deprived of that right. *Ostolaza* v. *Warden,* 26 Conn. App. 758, 763, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). The habeas court properly found as a fact that the petitioner never expressed his desire to testify at trial, and that trial counsel's advice to the petitioner regarding the pros and cons of the decision to testify was sound. The petitioner cannot prevail on his claim that counsel's performance was deficient. Id., 764. " '[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is [through] a claim of ineffective assistance of counsel [pursuant to] *Strickland* v. *Washington,* [supra, 466 U.S. 668].' " *Commissioner of Correction* v. *Rodriquez,* supra, 222 Conn. 476, citing *United States* v. *Teague,* 953 F. 2d 1525, 1534 (11th Cir.), cert. denied,     U.S.     , 113 S. Ct. 127, 121 L. Ed. 2d 82 (1992). As is the case in any such claim, the burden was on the petitioner to show that he was not aware of his right to testify, not on the state to show that he was. See *Commissioner of Correction* v. *Rodriquez,* supra, 477. The petitioner here has not shown that his trial counsel's conduct was deficient under *Strickland.*

Having made the finding that trial counsel's performance was not deficient, the second habeas court was

---

[14] For example, when asked why he did not ask to take the stand, the petitioner replied "I was waiting on my attorney," which indicates that the petitioner was aware of his right but was deferring to his attorney's judgment. The court also noted that although the petitioner's native language is Spanish, his command of the English language was sufficient for him to conduct his businesses and to communicate with his attorney.

not required to conduct an analysis under the second prong of *Strickland*. Nonetheless, the habeas court conducted an analysis in accordance with our Supreme Court's mandate as to whether, if it had found trial counsel's performance to be deficient, it would have had a prejudicial effect on the petitioner's trial.

Our Supreme Court's mandate directed the second habeas court to consider several factors in making this analysis under the second prong of *Strickland:* first, whether the petitioner actually knew of his right to testify on his own behalf; second, whether, if he had been apprised of that right, he actually would have taken the stand, in light of his reliance on his attorney's judgment; and, third, whether there was a reasonable probability that the strength of this testimony would have been enough to "undermine confidence in the outcome." In making this third determination, the habeas court was further instructed to weigh the petitioner's credibility and the impact of his proposed testimony against several factors, including the possibility of cross-examination with respect to the fires at his other properties, his prior fire insurance claims, his attempt to increase his fire insurance at the store, the pending eviction proceedings, his awareness of the type of bottle used in the incident, and his efforts to obtain a beer permit for his other grocery store.[15]

The trial court's memorandum of decision demonstrates a meticulous compliance with the above mandate. First, the court clearly and carefully considered whether the petitioner knew he had a right to testify. In making its finding that the petitioner was aware of the right, the court noted that the petitioner's testimony gave the impression that while trial counsel may not have specifically apprised him of his right to tes-

[15] The habeas court was also instructed to assess the extent to which the petitioner's testimony might have been duplicative of his statement to the police that was admitted into evidence at the first habeas proceeding.

tify, the petitioner was aware of the right and offered no credible testimony to indicate that he was at any time unaware of that right throughout the trial. While testifying, the petitioner "was hazy on the circumstances under which trial counsel advised him not to testify" and "could not recall how or why the discussion arose, or what was said or discussed." As the habeas court noted, counsel is not required to follow a script, and the record as a whole supports the conclusion that the petitioner was aware of his right to testify.

Second, the court considered whether the petitioner actually would have taken the stand, in light of his reliance on his attorney's judgment. The court found that the petitioner would not have overruled counsel's advice. This conclusion is bolstered by the fact that the petitioner and trial counsel had maintained a professional relationship for several years. The finding is also supported by several statements made by the petitioner during the course of both habeas proceedings, such as that he was "waiting on" his attorney's advice prior to deciding whether to testify.

Third, the court considered whether there was a reasonable probability that the petitioner's proposed testimony would have been enough to "undermine the outcome" of the proceeding, thereby constituting prejudice under *Strickland*. The only exculpatory evidence in the petitioner's proposed testimony that was not already before the jury was his explanation that he knew the bottle was a Coca-Cola bottle because he initially saw it from a distance of five to ten feet, not fifty. As instructed by our Supreme Court, the habeas court weighed the petitioner's credibility and the impact of this proposed testimony against the factors listed previously.

In so doing, the habeas court found the petitioner not to be credible, and consequently determined that his

proposed testimony would not have been enough to undermine confidence in the outcome of his criminal trial. While acknowledging that it had no way of knowing what the petitioner's demeanor would have been ten years earlier at his criminal trial, the court noted that the petitioner's demeanor at this proceeding was extremely poor. The court found that the petitioner's testimony was "inconsistent and unresponsive," and that the petitioner often seemed unwilling or unable to give a direct or credible answer, even to "seemingly significant and uncomplicated questions, including some posed by his own counsel."[16]

The court, as instructed, also considered the possible effect of cross-examination of the petitioner on the

---

[16] For example, during cross-examination, the petitioner was asked when he had told trial counsel that he wanted to testify:

"Q. How many times during the trial did you tell Mr. Williams that you wanted to testify?

"A. It could have been more than one, but I remember one.

"Q. And when was that?

"A. I don't remember, you know, while it was in court, while I was in trial, while the trial was going on, when the trial was going on, excuse me.

"Q. Well, what was going on at the trial at that time?

"A. She was telling me that everything was okay.

"Q. At what point during the trial did you tell Mr. Williams that you wanted to testify?

"A. Around the middle of the trial.

"Q. During the state's case or your case?

"A. Yes.

"Q. Which one?

"A. When the jury—when they were talking with the jury.

"Q. When who was talking to the jury?

"A. The lawyer.

"Q. Which lawyer?

"A. Williams.

"Q. Williams was talking to the lawyer—Mr. Williams was talking to the jury, that's when you told him you wanted to testify?

"A. When we were in the little room, when we were in the break, during the break.

"Q. I'll ask it one more time. At what point during the trial when you were on this break, did you tell Mr. Williams you wanted to testify?

"A. Yes, yes."

issues of concern to trial counsel, such as the prior fires and insurance claims. While the court found it unlikely that such cross-examination would be admitted or attempted, the court determined that given the petitioner's vagueness and inconsistencies, the jury would have been unlikely to attach much credence to his testimony, and that counsel's stated concern about possible surprise was well-founded.[17] The habeas court concluded that the petitioner was not credible and that therefore the omission of his proposed testimony in no way undermined confidence in the outcome of the criminal trial.

We are in accord with the habeas court's legal conclusions and findings of fact, as they are supported by the record as a whole and by the court's memorandum of decision. The habeas court complied with our Supreme Court's mandate and went further than required in finding no prejudice even though the petitioner failed to establish that counsel's performance was constitutionally deficient.

The judgment is affirmed.

In this opinion the other judges concurred.

[17] For example, near the end of the proceedings, the petitioner suddenly announced that he had retained his trial counsel by mistake, thinking he was retaining another New Haven lawyer also named Williams. Given that counsel had already represented the petitioner in several civil proceedings, such a mistake seems highly implausible, and supports the habeas court's finding as to the petitioner's credibility.