[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, David Lewis, filed a petition for a writ of habeas corpus, dated January 20, 1998,[1] alleging ineffective assistance of his trial counsel, Attorney John Williams.[2] The petitioner seeks relief from his alleged illegal confinement in the custody of the commissioner of correction. Specifically, the petitioner requests: "A. That he be granted a new trial on the charges of Murder and Conspiracy to Commit Murder as set forth in docket number CR6:312857; B. That all proceedings in this matter be expedited; and C. That justice be done." For the following reasons, the petitioner's request is denied.
A hearing on the petition was held on August 18, 1998,[3]
April 13, 1999,[4] and April 27, 1999.[5] At the hearing, the court heard oral testimony and received documents into evidence, including a transcript of the petitioner's trial. SeePetitioner's Exhibit "J", Transcript of the hearing and Court'sRuling on Motion to Suppress (Hadden, J., June 12-13, 1990); Petitioner's Exhibit "K", Trial Transcript (Hadden, J., June 13-15, 18-20 (1990). Those testifying included: Jack Dziekan, First Assistant Clerk at New Haven Superior Court; Owen Lewis, the petitioner's brother; David Lewis, the petitioner; James Ruane, the petitioner's expert on criminal defense lawyering; John Williams, the petitioner's trial counsel; Brian Carlow, the public defender who represented the petitioner at his probable cause hearing; and James Clark, the prosecuting attorney at the petitioner's trial. Subsequent to the hearing, the petitioner submitted a post-trial memorandum of law on August 13, 1999.[6]
The respondent submitted its post-trial memorandum of law on or about October 5, 1999.[7] Based upon the evidence adduced at the habeas hearing, the court makes the following findings and order.
 I.
The petitioner, David Lewis, is currently an inmate in the custody of the commissioner of correction at Cheshire Correctional Facility. The petitioner was arrested on or about CT Page 15170 August 15, 1989, pursuant to a warrant charging him with Murder in violation of General Statutes § 53a-54a. On October 19, 1989, the defendant-petitioner, through his public defender, Brian Carlow, waived his right to a probable cause hearing. The court Damiani, J., found probable cause and the defendant-petitioner entered not guilty pleas to Murder in violation of General Statutes § 53a-54a, and two counts of Conspiracy to Commit Murder in violation of General Statutes §§ 53a-48 and53a-54a. On or about December 18, 1989, Attorney John Williams entered an appearance on behalf of the petitioner and proceeded to represent him at trial. On or about June 20, 1990, following a jury trial in the superior court, judicial district of New Haven, the petitioner was found guilty of Murder and Conspiracy to Commit Murder in connection with the shooting death of Fitzroy Pink, and was acquitted of Conspiracy to Commit Murder in connection with the shooting of Kenneth Pascoe. Thereafter, the petitioner was sentenced by the court to 50 years incarceration on the murder conviction and 20 years incarceration on the conspiracy conviction to run concurrently. The petitioner appealed his conviction through his attorney John Williams, but his conviction was upheld by the Supreme Court. See State v. Lewis, 220 Conn. 602,600 A.2d 1330 (1991).
The appellate court found that the jury could have reasonably found the following facts on Sunday evening, September 18, 1988, the defendant and Trevor Pinnock, who were friends, were playing soccer with other participants at a field near Hillhouse High School in New Haven. The victims, Fitzroy "Soup" Pink and Kenneth Pascoe, although not participants in the game, were in the vicinity of the soccer field while the match was being played. At the conclusion of the game, the defendant and Pinnock left the soccer field together and walked to the defendant's car, which was parked on Country Street, adjacent to the soccer field. There the two men obtained handguns from inside the vehicle. Thereafter, both armed, they momentarily separated. Pinnock walked over to Pascoe, who was seated in his car, and pointed an automatic handgun at his head. Pinnock told Pascoe, "You're dead," and pulled the trigger, but his gun failed to fire. Moments later the defendant aimed his gun at Pink and, at a distance of approximately two car lengths, shot Pink three or four times, killing him. The defendant and Pinnock then ran from the scene together.
"At the time of the defendant's arrest nearly one year later, the police discovered an identification card in the defendant's CT Page 15171 possession that bore Pinnock's name and photograph. When questioned about the card, the defendant asserted that he knew no one named Trevor Pinnock. He did, however, admit having shot and killed Pink." Lewis v. Warden, supra, 220 Conn. 604-05.
 II.
In count two of his complaint,[8] the petitioner alleges that his trial counsel provided him with ineffective legal assistance. In his brief the petitioner argues that counsel was ineffective in that he: (1) failed to investigate; Petitioner'sBrief, pp. 7-11, 20-25; (2) failed to allow the petitioner to testify and failed to explain the petitioner's right to testify;Petitioner's Brief, pp. 11-14, 25-28; and (3) failed to object to "Doyle" violations by the prosecutor and engaged in and opened the door to further "Doyle" violations. Petitioner's Brief, pp. 16-18, 28-33.[9]
The petitioner's right to effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution. Copas v. Commissioner, 234 Conn. 139, 153,662 A.2d 718 (1995). In order for the petitioner to succeed in his claim that he was denied effective assistance of counsel during his criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by this counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Copas v. Commissioner, supra, 153; Bunkley v. Commissioner, 222 Conn. 444, 445, 610 A.2d 598
(1992).
To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) Johnson v.Commissioner, 36 Conn. App. 695, 703, 652 A.2d 1050, cert. CT Page 15172 denied, 233 Conn. 912, 659 A.2d 183 (1995).
In Strickland, the Supreme Court opined: "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."Strickland v. Washington, supra, 466 U.S. 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.)Strickland v. Washington, supra, 466 U.S. 690; Quintana v.Warden, 220 Conn. 1, 5, 593 A.2d 964 (1991); Williams v. Warden,217 Conn. 419, 423, 586 A.2d 582 (1991)." Jeffrey v.Commissioner, supra, 36 Conn. App. 219-20. However, it is clear that failure to investigate is not a matter of trial tactics. "Constitutionally adequate assistance of counsel includes competent pretrial investigation." Siemon v. Stoughton,184 Conn. 547, 554, 440 A.2d 210 (1981).
1. Counsel's Failure to Investigate
In his brief, the petitioner argues that "[t]he facts support the conclusion that trial counsel was deficient in his efforts to investigate the facts associated with the shooting of Fitzroy Pink and adequately represent his client." Petitioner's Brief, p. 22. "`Constitutionally adequate assistance of counsel includes competent pretrial investigation.' Siemon v. Stoughton, [supra,184 Conn. 554]. The failure to conduct an adequate investigation cannot be excused in the penumbra of trial tactics. Id., 556."Ostolaza v. Warden, 26 Conn. App. 758, 765, 603 A.2d 768 (1992). However, "`to run concurrently [a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on CT Page 15173 the judgment.' Strickland v. Washington, supra, 466 U.S. 687,691. `Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' Id., 693." Taft v.Commissioner of Correction, 47 Conn. App. 499, 504, 703 A.2d 1184
(1998). Rather, the defendant must show that there is a `reasonable probability' that but for counsel's unprofessional errors, the result of the proceeding would have been different.Copas v. Commissioner, supra, 234 Conn. 147. A reasonably probability is defined as "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra,466 U.S. 694. Moreover, "[a] court need not determine the deficiency of counsel's performance if consideration of the prejudice prong [of the Strickland test] will be dispositive of the ineffectiveness claim. Aillon v. Meachum, 211 Conn. 352, 362,559 A.2d 206 (1989)." Nieves v. Commissioner of Correction,51 Conn. App. 615, 620, ___ A.2d ___ (1999). In the present case, the court finds that the petitioner has failed to establish that he was prejudiced by his counsel's alleged failure to investigate and as such, the court need not decide if Attorney Williams' performance was deficient.
At the habeas hearing, the petitioner testified that he never met with Attorney Williams to discuss his case prior to jury selection. HABEAS TRANSCRIPT I, p. 35; see also Petitioner'sBrief, p. 22. The petitioner also testified that he did not review any witness statements with Williams during the trial, he wasn't shown any investigative results, and he never discussed with Williams what his defense was going to be. HABEAS TRANSCRIPTI, p. 38; see also Petitioner's Brief, p. 22. He further testified that he did not discuss with Attorney Williams the facts of the case or what occurred on "that date." HABEASTRANSCRIPT I, pp. 38-39. The petitioner also testified that he never saw or reviewed the warrant affidavits or the warrant for his arrest with Williams. Id., 60. Finally, the petitioner testified that Attorney Williams never hired an investigator to investigate his case. Id., 59.
As a result of these deficiencies, the petitioner claims that Williams conducted an inadequate cross-examination of the key witness Jerome Bailey and was therefore unable to impeach him.Petitioner's Brief, pp. 23-24. The petitioner also claims that as a result of Williams' deficient investigation counsel failed to CT Page 15174 discover defense witnesses "who existed and . . . who possessed helpful information." Id., 23 (referencing Petitioner's Exhibit"L" and Petitioner's Exhibit "M", the April 26, 1992, statements of Carl Mitchell and Levon Moore).[10] Finally, counsel claims that Williams chose not to investigate information in the deceased's medical records indicating that the victim "had an argument in the cafe. Later found in Street"; information indicating "that someone may have had a motive to shoot Fitzroy Pink and if proved to be true, may have been sufficient to create a reasonable doubt in the State's case against the Petitioner."Petitioner's Brief, pp. 24-25.
At the habeas hearing, Attorney Williams testified that he in fact did not hire an independant investigator to investigate the petitioner's case. Instead, he testified, he relied upon the petitioner's brother, Owen Lewis to be the primary investigator.HABEAS TRANSCRIPT II, p. 43. He did this, Williams testified, because the community in which it was necessary to conduct the investigation, was the West Indian community, which no outside investigator would ever be able to breach. Id., 62-63. Williams testified, that Owen Lewis agreed to this arrangement to help find witnesses and be an aggressive investigator for his brother. Id.
Owen Lewis, on the other hand, testified that Williams never asked him to be an investigator in the case, and he couldn't have anyway, because he went to school full time and held a part time job. HABEAS TRANSCRIPT III, p. 5. He further testified that he did some investigation work, but only after the trial in an effort to clear his brother. Id., 6. Owen Lewis also testified that Attorney Williams told him that the $40,000.00 fee he paid for his brother's case included the cost of an investigator.HABEAS TRANSCRIPT I, p. 18; HABEAS TRANSCRIPT III, pp. 3-6.
Whether or not Attorney Williams failure to hire an official investigator was deficient is an issue that this court need not determine. Our Supreme Court has held that "[a] court need not determine the deficiency of counsel's performance if consideration of the prejudice prong [of the Strickland test] will be dispositive of the ineffectiveness claim." (Citation omitted.) Nieves v. Commissioner, supra, 51 Conn. App. 620. Such is the situation before this court. In a habeas corpus proceeding, the burden of establishing grounds for relief rest with the petitioner. Biggs v. Warden, 26 Conn. App. 52, 55,597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991). Thus CT Page 15175 in order to succeed with his failure to investigate claim, the petitioner must show that there was information that was available through investigation at the time of trial, that Attorney Williams failed to uncover, thereby prejudicing the petitioner's defense.
Underlying the petitioner's claim that counsel's inadequate investigation prevented the impeachment of Jerome Bailey, is the petitioner's claim that Jerome Bailey, who testified at the petitioner's trial as an eyewitness, was not actually present on the day in question. In support of this claim, the petitioner produced two statements for the court, one by Carl Mitchell, and the other by Leonard Moore. See Petitioner's Exhibit "L",Petitioner's Exhibit "M".[11] According to Mr. Moore's statement, dated April 26, 1992, Moore spoke with Jerome Bailey about the shooting on September 18, 1988, at which time Bailey admitted to him that he was not present, but lied to the police in order to protect his cousin Carl Mitchell who was present and had been selling beer without a permit. Petitioner's Exhibit "L".
According to Mr. Mitchell's statement, also dated April 26, 1992, he was present at the soccer field on the day of the shooting and while he heard the shots, he did not witness the shooting.Petitioner's Exhibit "M". Both statements were obtained through the investigative efforts of Owen Lewis, the petitioner's brother, in 1992. HABEAS TRANSCRIPT I, pp. 24-25 (testimony of Owen Lewis); HABEAS TRANSCRIPT II, pp. 41-43 (testimony of Attorney Williams).
While the production of the two statements at the habeas hearing appear, at first blush, to support the petitioner's claim that Attorney Williams failed to investigate the petitioner's case, a closer look reveals that the statements are not persuasive evidence. In fact, what stands out first to the court is the fact that they are written statements and they are nearly seven years old. The petitioner did not produce Mitchell or Moore to testify at the habeas hearing. Nor did he provide an explanation as to why he failed to produce them. Furthermore, the statements contain insufficient information to allow the court to determine if Mitchell and Moore's testimony would have in any way impacted the outcome of the petitioner's trial. The statements fail to indicate whether or not the men would have been available to testify at the petitioner's trial and whether or not they would in fact have testified. The petitioner's failure to show that Moore and Mitchell would have been available and would have testified is fatal to the petitioner's claim that counsel's CT Page 15176 inadequate investigation resulted in the failure to identify defense witnesses with exculpatory information. Nieves v.Commissioner of Correction, supra, 51 Conn. App. 623 ("InOstolaza [v. Warden], our Supreme Court determined that the petitioner's failure to show that the claimed missing witnesses would have been available or that their testimony would have been relevant and admissible was fatal to the petitioner's claims.")
The petitioner's claims that counsel's failure to investigate the deceased's medical records prevented him from pursuing a defense based upon third party culpability, must also fail. At the habeas hearing, the petitioner failed to produce any evidence indicating that the report in the medical records was anything more than a clerical error, as it was believed to be by Attorney Williams. See HABEAS TRANSCRIPT II, p. 121. Without any evidence to support his claims, the petitioner is unable to meet his burden of demonstrating that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Thus it is the finding of this court that Attorney Williams did not render ineffective assistance of counsel by failing to investigate the petitioners case or by failing to discover key defense witnesses.
2. Counsel's Failure to Inform Petitioner that He Had the Rightto Testify
The petitioner claims that after the state rested its case, he informed Attorney Williams that he wanted to take the stand and testify to rebut the testimony of three of the state's witnesses; Jerome Bailey, Detective Ortiz and Pieszak.Petitioner's Brief, p. 11; HABEAS TRANSCRIPT I, p. 56-57. According to the petitioner, Attorney Williams told him that "he didn't think it was a good idea for [him] to take the stand" because "they [the prosecution] would bring up the issue of the ID, the identification that they took from me and the marijuana."[12] HABEAS TRANSCRIPT I, p. 57. Also, the petitioner claims that Attorney Williams never told the petitioner that he had the right to take the stand. Petitioner'sBrief, p. 12; Thus, the petitioner claims that he did not take the stand only because counsel's inadequate assistance led him to believe that he did not have the right to take the stand.
At the habeas hearing Attorney Williams testified that he could not remember explicitly advising the petitioner of his rights, but that he could state "categorically" that he never CT Page 15177 told the petitioner that he would not let him testify. HABEASTRANSCRIPT II, p. 67. He testified that it was possible that the petitioner had asked him if he thought he should testify, and that he would have likely answered that he didn't think so. According to Attorney Williams, it was his understanding from discussions with the petitioner as well as notes taken by another attorney that were in the petitioner's file, that the petitioner had in fact shot Fitzroy Pink because he had heard on the street that Pink was out to get him. HABEAS TRANSCRIPT II, pp. 59-60. Thus, Attorney Williams testified he did not think that the petitioner should take the stand because "his taking the stand could only have injured himself [by confessing] unless he was going to get up there and make up a story, and obviously I couldn't be a party to that." Id., 66. Had the petitioner insisted, however on taking the stand to testify that he had not shot Pink, Attorney Williams testified that he would have made a motion to withdraw from the case. Id., 68. Attorney Williams testified, however, that the petitioner never stated to him that he wanted to testify. Id., 67.
"In order for [counsel's] alleged failure to be considered deficient under Strickland, the petitioner must first establish such failure and then show that such a failure is not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in criminal law. Summerville v.Warden, 29 Conn App. 162, 170, 614 A.2d 842 (1992). rev'd on other grounds, 229 Conn. 397, 641 A.2d 1356 (1994). `[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'Strickland v. Washington, supra, 466 U.S. 690.
"The sixth amendment does not entitle criminal defendants to error free representation. Commissioner of Correction v.Rodriquez, supra, 222 Conn. 478. `Judicial scrutiny of counsel's performance must be highly deferential.' Strickland v.Washington, supra, 466 U.S. 689. A fair assessment of attorney performance at trial requires that the reviewing court make every effort to avoid the distorting effect of hindsight. Id., 689. In fact, the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance. Id." Rodriquez v. Commissioner of Correction,35 Conn. App. 527, 535, 646 A.2d 919, cert. denied, 231 Conn. 935,650 A.2d 172 (1994). CT Page 15178
Having reviewed the testimony of both the petitioner and Attorney Williams at the habeas hearing, the court finds that the petitioner did not present any evidence to establish that Attorney Williams never told him that he had a right to testify. Attorney Williams testified that he has no specific recollection
of informing the petitioner that he had a right to testify, not that he never told him about his right to testify. Moreover, the petitioner testified that Attorney Williams advised him that he didn't believe it was a good idea for him to testify because he would likely be impeached. "There would have been no need for any discussion between the petitioner and his trial counsel about the pros and cons of the petitioner's testifying unless it was implicitly understood that the petitioner had the right to testify." Rodriquez v. Commissioner, supra, 35 Conn. App. 536. The petitioner has merely shown that Attorney Williams, testifying without the benefit of his trial records, could not recall informing the petitioner of his right to testify.
"Criminal defendants are required to take some affirmative action regarding their right to testify before they can claim that they have been deprived of that right. Ostolaza v. Warden,26 Conn. App. 758, 763, 603 A.2d 768, cert. denied,222 Conn. 906, 608 A.2d 692 (1992)." Rodriquez v. Commissioner, supra,35 Conn. App. 537.
It is the finding of this court that the petitioner never expressed his desire to testify at trial and Attorney Williams' advice to the petitioner regarding the pros and cons of the decision to testify was sound. The petitioner cannot prevail on his claim that Attorney Williams' performance was deficient. As is the case with any ineffective assistance of counsel claim, "the burden [is] on the petitioner to show that he was not aware of his right to testify, not on the state to show that he was. See Commissioner of Correction v. Rodriquez, supra, [222 Conn.] 477. The petitioner here has not shown that Attorney Williams' conduct was deficient under Strickland.
Having determined that counsel's performance was not deficient, this court need not conduct an analysis under the second prejudice prong of Strickland.
3. Counsel's Failure to Object to "Doyle" Violations andCounsel's Participation in "Doyle" Violations
The petitioner claims that he was prejudiced by Attorney CT Page 15179 Williams' failure to object to "Doyle" violations committed by the prosecutor. He further claims that Williams himself opened the door to further violations. In Doyle v. Ohio, 426 U.S. 610,96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that it was a violation of a defendant's constitutional rights to use a defendant's post-arrest silence to impeach the defendant's credibility. "With respect to post-Miranda warning . . . silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." Wainwright v. Green, 474 U.S. 284, 295, n. 13,106 S.Ct. 634, 88 L.Ed.2d 623 (1986); see also State v. Hull,210 Conn. 481, 489, 556 A.2d 154 (1989); State v. Hughes,45 Conn. App. 289, 294, 696 A.2d 347 (1997).
"`The factual predicate of a claimed Doyle violation is the use by the state of a defendant's postarrest and postMiranda silence either for impeachment or as affirmative proof of his guilt.' State v. Joly, 219 Conn. 234, 256, 593 A.2d 96 (1991). The introduction of evidence concerning the defendant's invocation of his constitutional rights is constitutionally prohibited if such evidence is introduced for the purpose of impeaching the defendant or demonstrating his guilt, but such evidence may be presented to show the investigative effort made by the police and the sequence of events as they unfolded, or the adequacy of the Miranda warnings given. State v. Jones,215 Conn. 173, 186, 575 A.2d 216 (1990); State v.Casey, 201 Conn. 174, 183, 513 A.2d 1183 (1986); Statev. Moye, 177 Conn. 487, 496-99, 418 A.2d 870, vacated and remanded on other grounds, 444 U.S. 893, 100 S.Ct. 199,62 L.Ed.2d 129, on remand, 179 Conn. 761, 409 A.2d 149
(1979); State v. Rogers, 9 Conn. App. 208, 217,518 A.2d 399, cert. denied, 202 Conn. 806, 520 A.2d 1288, cert. denied,481 U.S. 1051, 107 S.Ct. 2185, 95 L.Ed.2d 841 (1987)." State v.Daugaard, 32 Conn. App. 483, 502-03, 630 A.2d 96 (1993), ___________, 231 Conn. 195, 647 A.2d 342 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 770, 130 L.Ed.2d 666 (1995). "The rationale of Doyle is that it would be fundamentally unfair if the state, after having told the defendants, via Miranda warnings, that they have a right to remain silent, later uses the silence against them. The silence of a defendant is ambiguous because it cannot be known whether it is an assertion of his constitutional rights or an indication of his guilt. If a defendant chooses to assert his Miranda rights, the state may not comment on that assertion during trial. State v. Apostle, 8 Conn. App. 216, 223, CT Page 15180512 A.2d 947 (1986)." State v. Daugaard, supra, 503.
a. Alleged "Doyle" Violations by the State
During the petitioner's trial, Assistant State's Attorney Clark, called Detective Francisco Ortiz to the stand.Petitioner's Exhibit "K", p. 350. Ortiz was the principle investigating detective on the case. Ortiz testified that subsequent to Mr. Lewis's arrest, Lewis waived his right to remain silent and agreed to an interview. Id., 404-05, 410.[13]
According to Ortiz, during his interview "he [the petitioner] admitted to me that he killed Mr. Fitzroy Pink who he referred to as Soup. He said, "I killed him" because if he had not killed him Soup would have somehow killed him." Id., 411, 413. Ortiz, then testified that he obtained a taped statement from the petitioner on an unrelated matter. Ortiz also testified that he tried to speak further with the petitioner on tape about the homicide, but at that point the petitioner stated he didn't want to speak any more about the homicide. Id., 416. Attorney Clark then asked Detective Ortiz if he asked the petitioner why he didn't want to discuss the matter any further and Ortiz responded that he did not because "[t]he constitution prevents us [the police] from seeking any further once he [the person in custody] invokes the fact he doesn't want to speak with the police." Id.
The petitioner claims that Assistant State's Attorney Clark's question and Detective Ortiz's answer that "the constitution prevents us from seeking any further once he invokes the fact he doesn't want to speak with the police," constituted a "Doyle" violation and should have been objected to by Attorney Williams.Petitioner's Brief, pp. 30-31. In order to establish that Attorney Williams was, ineffective in failing to object to the alleged "Doyle" violation, the petitioner must show that counsel's failure to object was deficient, and that the petitioner suffered prejudice as a result of counsel's deficient performance. Strickland v. Washington, supra, 466 U.S. 687. "References to one's invocation of the right to remain silent is not always constitutionally impermissible, however." State v.Moye, supra, 177 Conn. 496. "In State v. Hull, supra, 491, our Supreme Court noted that testimony concerning investigative effort that refers to a defendant's postarrest silence is constitutionally permissible [in certain limited circumstances, such as]" where only one police officer briefly describe as] what had transpired when [the] defendant was interviewed at the police station.'" (Emphasis in original.) State v. Smith,
CT Page 1518142 Conn. App. 41, 48, 680 A.2d 1340 (1996)." State v. Gonzalez-Rivera,48 Conn. App. 784, 802, 713 A.2d 847 (1998). A review of the transcript makes apparent that Ortiz's testimony was not being used to impeach the defendant's credibility — the forbidden purpose in Doyle v. Ohio — rather, it was introduced to show the investigative effort made by the police and the sequence of events as they unfolded. The state did not comment further on the petitioner's invocation of his right to remain silent. The state simply asked Detective Ortiz a few additional questions about the petitioner's emotional state during the interview, and then the state concluded its direct examination of Ortiz. Thus the state's question, and Detective Ortiz's answer did not violate the constitutional protection afforded by Doyle. Because the testimony did not violate the principles of Doyle, it cannot be said that counsel's failure to object to the testimony was deficient under Strickland.
However, even if counsel should have objected to the testimony, if only as a precautionary measure, it cannot fairly be argued that the petitioner suffered any prejudice as a result of the introduction of this testimony. Moments before the state asked its question, and Ortiz gave his "objectionable" answer, Ortiz twice testified that the petitioner confessed to killing Pink. The reference to the petitioner's invocation of his rights was slight in the context of Ortiz's complete testimony. Thus, the petitioner cannot establish he suffered any prejudice either. The court finds that with respect to exchange, Attorney Williams failure to object fell within the range of competence displayed by lawyers with ordinary training and skill in the criminal law.
b. Attorney Williams Alleged Participation in "Doyle"
Violations
The petitioner also claims that during cross-examination of Detective Ortiz, Attorney Williams opened the door to further "Doyle" violations when he twice asked Ortiz if the petitioner had in the face of questioning about the homicide, invoked his right to remain silent. Petitioner's Brief, p. 31, referring toPetitioner's Exhibit "K", pp. 429-32.[14] In addition to the damaging testimony, the petitioner claims that he was further hurt by the subsequent introduction of his tape recorded interview with Ortiz and a transcript of that interview.Petitioner's Brief, pp. 31-32. Ultimately, the petitioner claims, the introduction of the tape and the transcript had the effect of CT Page 15182 "impeaching the Petitioner's defense established through cross-examination of Detective Ortiz, that he never waived his Miranda rights as they applied to the Murder case." Id., 32. "The Doyle violations in the present case," the petitioner argues, "were particularly harmful because the defendant chose to exercise his constitutional right to remain silent at trial, and did not testify." Id.
At the habeas hearing, however, Attorney Williams testified that it was a deliberate tactical choice on his part to probe Ortiz on the issue of the petitioner invoking his right to silence.[15] According to Attorney Williams, much of the state's case rested on Ortiz's testimony that the petitioner had confessed.[16] Thus, it was important for him to attack Ortiz's credibility. He felt this was possible by drawing attention to the fact that, although Ortiz testified that the petitioner confessed, he also testified that the petitioner repeatedly refused to sign the rights waiver form, he refused to be taped, and he twice asked for an attorney. According to Williams, "Ortiz was a highly skillful police officer and witness. The one soft spot in my opinion in his story was his claim that Mr. Lewis, Mr. Lewis's confession to this crime was contemporaneous with his invocation of his right to silence, his statement that he wanted a lawyer, his refusal to be taped and so forth. . . . [T]he only possibility that the jury would believe that Ortiz was lying about that, was making it up was to show how ludicrous it was, and, of course, the only way you could do that was by showing that he had invoked his right to silence, that he had refused to go into this area so the confession just wasn't there."Petitioner's Exhibit "K", pp. 69-70.
"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Citation omitted.) Johnsonv. Commissioner, 222 Conn. 87, 92, 608 A.2d 667 (1992). Thus, "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge a strong presumption that counsel's conduct falls CT Page 15183 within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted.) Safford v. Warden,223 Conn. 180, 193-194, 612 A.2d 1161 (1992); see also Tillman v.Commissioner, 54 Conn. App. 749, 753, ___ A.2d ___ (1999). Gauging Attorney Williams' conduct by this standard, this court finds that Attorney Williams' conduct was not deficient, but was sound trial strategy.
Detective Ortiz was according to Attorney Williams, a "devastating" prosecution witness. He was the principle investigating officer with eleven and a half years on the force;Petitioner's Exhibit "K", p. 350; who testified that the petitioner had confessed in his presence to killing the victim Fitzroy Pink. It was Attorney Williams' educated belief that the only way to lessen the blow of Ortiz's testimony was to cast doubt on his credibility. To do this, Williams testified, he needed to emphasize the fact that the petitioner repeatedly invoked his constitutional rights to silence and legal representation. Under the circumstances, it cannot be said that Attorney Williams' tactical decision was unreasonable. Because his conduct was not unreasonable or deficient — the first prong of the Strickland ineffectiveness analysis — the court need not conduct the prejudice analysis.
For all of the aforementioned reasons, David Lewis's petition for a writ of habeas corpus is denied.
Zarella, Judge.