[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 29, 1996, petitioner pled guilty before Honorable John J. Ronan to the charges of one count of kidnaping in the first degree and one count of assault in the second degree. He was sentenced at that time to a term of imprisonment of twelve years on the kidnaping charge and five years concurrent on the assault charge for a total effective sentence of twelve years, to be served consecutively to another sentence he was already serving. This plea agreement came about after the trial on these charges had begun. Petitioner was represented by Assistant Public Defender, David Abbamonte, at all times relevant hereto. Petitioner was fully canvassed by Judge Ronan as pleas were entered.
Petitioner claims that his incarceration is illegal as his convictions were obtained in violation of his right to the effective assistance of counsel under the sixth and fourteenth amendments to the United States constitution, and article first, § 8 of the Connecticut constitution. In particular, petitioner claims that he withdrew his not guilty pleas and jury election, and entered guilty pleas of guilty as a result of the advice of trial counsel concerning: (a) the strength of the prosecution case against him, including the evidence available to the prosecution; and (b) the probable sentence that would be imposed if he persisted in his pleas of not guilty and jury election and were found guilty after such trial.
Petitioner further alleges that his attorney did not conduct an adequate investigation of the facts of the case including the alibi witnesses the petitioner claimed were available to support his assertion that he was not liable for the crimes charged; specifically, the petitioner claims that his attorney failed to locate and interview Bari Terry, his sister, who allegedly was available at the time this case was pending and "would have testified that the petitioner was at her home at 57 F. Easton Circle, West Haven, CT during the time the crime allegedly occurred.'
Petitioner requests this court to find that the performance of his attorney fell below the standard of reasonable competence of an attorney of ordinary skill and training in the criminal law, and that but for the actions and inactions of his attorney, it is reasonably probable that the result of the prosecution would have been different.
Respondent filed a return on September 8, 1999, and a habeas hearing was conducted on May 30, 2000. The witnesses appearing were petitioner, his sister Bari Terry, and Attorney Abbamonte. CT Page 11662
Habeas Corpus law has been well defined in numerous federal and state decisions. The United States Supreme Court "uniformly has been guided by the proposition that the writ [of habeas corpus] should be available to those persons "whom society has grievously wronged' in light of modern concepts of justice." Kuhlmann v. Wilson, 477 U.S. 436, 447,106 S.Ct. 2616,91 L.Ed.2d 364 (1986). Be it a felony or a misdemeanor a criminal defendant is entitled under the sixth and fourteenth amendments to the federal constitution to effective assistance of counsel. Gideon v.Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). A criminal defendant is not constitutionally entitled to error free representation.Commissioner of Correction v. Rodriguez, 35 Conn. App. 527, 534,646 A.2d 919 (1994).
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense . . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984).
It has been stated that a petitioner claiming ineffective assistance of counsel must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366,88 L.Ed.2d 203 (1985).
A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance.Strickland v. Washington, supra, 466 U.S. 689.
The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Siano v. Warden, 31 Conn. App. 94, 97, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993).
It is provided that effective assistance of counsel embraces an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction. Copas v.Commissioner of Correction, 234 Conn. 139, 154, 662 A.2d 718 (1995). "Constitutionally adequate assistance of counsel includes competent pretrial investigation. Siemon v. Stoughton, 184 Conn. 547, 554,440 A.2d 210 (1981). The failure to conduct an adequate investigation CT Page 11663 cannot be excused in the penumbra of trial tactics. Id., 556. While it is incumbent on a trial counsel to conduct a prompt investigation of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction; id. n. 3; counsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it . . . . One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence.' [Citations omitted; internal quotation marks omitted.]
The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Chace v. Bronson, 19 Conn. App. 674, 680-81, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989); State v. Talton,197 Conn. 280, 297, 497 A.2d 35 (1985). It has been stated that the decision as to what witnesses to call is commonly regarded as a tactical strategic decision. State v. Davis, 199 Conn. 88, 89-90, 506 A.2d 86
(1986).
The case of State v. Davis, deserves further mention. In that case, defendants' counsel declined to call a witness requested by the defendants. After a verdict and judgment of guilty, defendants appealed. The issue presented to the Appellate court was as follows:
 In a criminal case in which counsel had been appointed to represent the defendant, did the refusal of counsel to call a witness that his client had instructed him to call and the court's explicit approval of that refusal, where there was no allegation that the requested testimony would be either perjurious or irrelevant, violate the rights of the defendant to be heard and to have compulsory process to obtain witnesses in his behalf guaranteed by Conn. Const. Art. I, Sec. 8?
Citing federal case law, the Appellate court held: "Once counsel isappointed, the day-to-day conduct of the defense rests with the attorney. He, not the client, has the immediate — and ultimate
— responsibility of deciding if and when to object, whichwitnesses, if any to call, and what defenses to develop. Not only do these decisions rest with the attorney, but such decisions must, as a practical matter, be made without consulting the client. (Emphasis added.) Wainwright v. Sykes, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594
(1977) (Burger, C.J., concurring); ABA Standards for Criminal Justice CT Page 116644-5.2, 21-22 (2d ed. 1980). Jones v. Barnes, 463 U.S. 745, 751,103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)."
Further, "[i]t has been generally recognized that decisions concerning matters of trial strategy and tactics rest with the lawyer, as opposed to decisions concerning such inherently personal rights of fundamental importance to the defendant as those referred to in Jones and inWainwright."
That court, therefore, did not interpret article first, § 8 of the Connecticut constitution to grant a criminal defendant the right to make the ultimate decision as to which witnesses to call.
In cases arising from the entry of a guilty plea, our courts recognize a modified prejudice standard. See Hill v. Lockhart, 474 U.S. 52,106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial. Copas v. Commissioner ofCorrection, supra, 234 Conn. 151.
Attorney Abbamonte testified that he has been a public defender since 1975 (full-time over the past six years). He represented through his testimony that petitioner was hoping the victim would not appear for trial. There was no question as to the victim's identification of the petitioner as she had dated him for over a year before the offenses took place. Attorney Abbamonte further testified that petitioner's defense was that other people committed the assault on the victim and that his alibi was that he was with his mother and sisters in New Haven. When contacted, however, petitioner's mother and his sister, Glennice, both represented that petitioner was not with them at the time of this incident.
Attorney Abbamonte further represented that he discussed all of the charges with petitioner, including the persistent felony offender charge added by the state, and the maximum penalty he could get if convicted. Petitioner then elected to enter a plea of guilty (Alford plea) after testimony of the victim had begun.
Once again, petitioner argues that his sister, Bari Terry, should have been called as a witness in his trial and did present her as a witness in the habeas trial. She testified that during the month of September, 1995, she lived with petitioner and her boyfriend. On the day of the attack on the victim, she testified that petitioner was with his girlfriend, Carol (she does not know Carol's last name nor does she CT Page 11665 believe that Carol is still alive). She stated that petitioner was at her house until such time as he went over to Carol's house, which was across the street from her house. She believed petitioner spent the night at Carol's house and returned to her house "sometime before noon the next day."
Bari Terry further testified that although she heard the victim was in the hospital (some man called her and visited her on the night of the attack on the victim, she does not remember his name), she made no attempt to contact the police or anyone in her family. In response to cross-examination, she testified that she only spoke to petitioner one time after his arrest, and that was in the year 1999, three years after he pled guilty and was sentenced.
The testimony of Bari Terry, as a whole, was vague and inconsistent. She did not remember the name of the person who called her concerning the assault on the victim, and who also came to her house at approximately 2 a.m. that morning (the night of the assault). She was uncertain of the frequency and duration of times that petitioner was in her presence during that time. Further, she testified that she believed that petitioner and the victim were still dating as she had not heard that they had "broken up." Despite that belief, she testified that she did not say anything to petitioner after either the phone call which she received at about 12 to 12:30 a.m., or the personal visit she received from said person at about 2 a.m. The court finds the testimony of Bari Terry not credible and does not believe it would have been helpful to petitioner in establishing his asserted defense.
In any case, petitioner entered a plea of guilty and was fully and effectively canvassed by the court before the agreed upon sentence was imposed. Petitioner's testimony at the habeas trial lacked credibility in that regard. He testified that he told the judge at the time of his sentencing that he did not have enough time to talk with his attorney. The transcript of the March 29, 1996 hearing, however, reflects the fact that the judge fully canvassed him specifically on that point.
Petitioner further testified that many things he said to the judge were not in the transcript and that he never admitted "doing the things to that woman." He testified that he told the judge that he "didn't do it" and that "there was no plea agreement." He further testified that he told the sentencing judge that he wanted another attorney. His testimony, on the above points is not credible to any degree, given the transcript of the sentencing hearing (admitted as State's Exhibit A). His testimony at the habeas trial was simply not worthy of belief.
The testimony of the petitioner and his sister, Bari Terry, did not CT Page 11666 satisfy the Hill standard. This court does find that the testimony of Bari Terry would not likely have been successful at trial in adding to or assisting this petitioner's defense.
This court further finds, in accordance with the Davis decision, and its supporting authority, that even if petitioner had requested Attorney Abbamonte to call Bari Terry as a witness, the decision of whether or not to do so was properly within the discretion of the attorney. No showing has been made, even in hindsight, that his decisions in that regard were improper or lacking in sound judgment.
Accordingly, the petition for writ of habeas corpus is hereby denied and dismissed.
Resha, J.